James E. Goodley
GOODLEY McCARTHY LLC
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 394-0541
james@gmlaborlaw.com

*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JULIAN HAGINS and SHADAJAH COSTIN individually and on behalf of all those similarly situated | : **Case No. 1:24-cv-07493** <br> : <br> : **FIRST AMENDED CLASS ACTION** <br> : **COMPLAINT** <br> : |
| Plaintiffs, <br> v. | : <br> : <br> : |
| PARAMOUNT GLOBAL, CBS INTERACTIVE INC., and PARAMOUNT GLOBAL SEVERANCE PLAN | : <br> : <br> : <br> : |
| Defendants. | : |

## INTRODUCTION

1.     On or about September 24, 2024 and within 30 days thereof, Defendants Paramount Global ("Paramount") and CBS Interactive Inc. ("CBS Interactive") terminated the employment of Plaintiffs Julian Hagins ("Hagins"), Shadajah Costin ("Costin") and more than 500 other putative class member employees who worked at and/or reported to their headquarters at 1515 Broadway in Manhattan ("Headquarters"), as well as other integrated operating locations in close geographic proximity to Headquarters ("NYC Surrounding Facilities").  These layoffs constituted a "mass layoff" under New York WARN, N.Y. Lab. Law §§ 860 *et seq.* ("NY WARN") and the Federal WARN Act, 29 U.S.C. §§ 2101, *et seq.* ("Federal WARN") (collectively, the "WARN Acts").  Defendants similarly laid off more than 700 employees at Headquarters and NYC

Surrounding Facilities on or about February 16, 2024 and within 30 days thereof.  Both events constitute WARN-covered mass layoffs.

2.      In all instances, Defendants provided Plaintiffs and class members less than one week prior written notification of the mass layoffs, i.e., far less than the 90 days' advanced notice required under NY WARN, or even the 60 days' notice required by Federal WARN.  As a result, Plaintiffs seek the relief sought under the WARN Acts on behalf of themselves and all others similarly situated.

3.      Additionally, Defendants maintain the Paramount Global Severance Plan ("Severance Plan"), which provides a formula of (at minimum) two weeks of severance pay per year of service at termination of employment.  However, the Severance Plan includes an illegal offset provision, which states that "...[i]f [WARN] obligations exist, the employee's severance benefits under this Plan will be reduced accordingly, and if already paid, an appropriate amount of any benefits paid under this Plan shall be returned to the Company."  *See* **Ex. B, Severance Plan, § 5.3**.  Courts have held that such offset provisions are legally null and void due to the fact that Federal WARN only allows (in relevant part) an offset for "voluntary and unconditional" payments, 29 U.S.C. § 2104(a)(2)(B), not payments which are owed according to a preexisting legal obligation, such as benefits owed under an ERISA severance plan.  *See, e.g.*, *Gray v. Walt Disney Co.*, 915 F. Supp. 2d 725, 734 (D. Md. 2013) ("Many courts have indeed held that ERISA-governed severance benefits may not offset inadequate notice under WARN because such benefits were already legally owed the employees.") (citing cases).  Courts similarly reject provisions in ERISA severance plans which purport to reduce severance owed under the plan.  *See id.*, (rejecting the defendant's argument that "employers may limit [ERISA-governed] severance benefits as they see fit, including by offsetting severance with payments made during a 60-day WARN notice

period in lieu of required actual notice.").

4.      Plaintiffs are participants in the Defendants' Severance Plan.  Plaintiffs have received automatic payments under the Severance Plan as weekly payments through their Review Periods, but are in jeopardy of being required to pay back these benefits to Paramount if the Court determines that Defendants violated the WARN Acts (if Plaintiffs do not sign a general release within the next couple months).  As the plain terms of the Severance Plan violate both ERISA and Federal WARN, Plaintiffs seek equitable relief under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to enjoin Defendants and the Severance Plan from requesting or demanding that any participant who has been laid off as a result of a WARN-governed termination to repay any benefits paid under the plan, as well as to reform the terms of the Severance Plan to remove any WARN-offset provisions.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' Federal WARN claims, per 29 U.S.C. §§ 2101, *et seq*., as well as per the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1).

6.      This Court has jurisdiction over Plaintiffs' NY WARN claims, N.Y. Lab. Law §§ 860 *et seq.*, pursuant to 28 U.S.C. § 1367, because these claims are so related to the Federal WARN and ERISA claims that both claims form part of the same case or controversy.

7.      Alternately, this Court has jurisdiction over Plaintiffs' NY WARN claims, N.Y. Lab. Law §§ 860 *et seq.*, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), as at least one Plaintiff is of diverse citizenship from Defendants, more than 100 putative class members are affected by Defendants' alleged violations, and more than $5,000,000 is in controversy.

8.    Plaintiffs bring all claims for violation of the WARN Acts on behalf of themselves and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5), NYLL § 860-g, and Fed. R. Civ P. 23.

9.    Plaintiffs bring all claims for violation of ERISA on behalf of themselves and on behalf of all other similarly situated former employees/participants, pursuant to 29 U.S.C. § 1132(a)(3) and Fed. R. Civ P. 23.

10.    Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

11.    Plaintiff Hagins is an adult male who resides in Orange, California.  Plaintiff Hagins worked for Defendants on a full-time basis from approximately March 2022 through September 2024.  During all relevant time periods, Plaintiff Hagins reported remotely from his home in Orange, California, to Defendants' Headquarters.

12.    Plaintiff Costin is an adult female who resides in The Bronx, New York.  Plaintiff Costin worked for Defendants on a full-time basis from approximately May 2017 through September 2024.  During all relevant time periods, Plaintiff Costin reported to Defendants' Headquarters on a hybrid basis (e.g., partially telecommuting and partially working in person at Surrounding Facilities, specifically 555 W. 57th St.).

13.    Defendant Paramount Global ("Paramount") is a Delaware for-profit corporation headquartered in New York City, NY.  Defendant Paramount Global is also the plan administrator of the Defendant Paramount Global Severance Plan within the meaning of 29 U.S.C. § 1002(16)(A).

14.     Defendant CBS Interactive Inc. ("CBS Interactive") is a Delaware for-profit corporation headquartered in New York City, NY.

15.     Defendant Paramount Global Severance Plan ("Severance Plan") is an employee benefit plan within the meaning of ERISA.

16.     Defendant Paramount's and CBS Interactive's unified corporate headquarters are located at 1515 Broadway, New York, New York, 10036.

## FACTS

17.     At all relevant times, Plaintiff Hagins' direct supervisors (including Jeremy Westphal, Andy Sarnow and Steve Raizes) worked in-person at Headquarters and provided work assignments, general employment supervision, and personnel evaluations to Plaintiff.

18.     Other management personnel located at Headquarters provided work assignments, employment supervision, and personnel evaluations to Class Members.

19.     Plaintiff Hagins is a participant in the Severance Plan, has not yet signed the general release required by the plan, but has until November 25, 2024 to sign, per the "Review Period" set by Defendants in connection with his termination of employment.

20.     At all relevant times, Plaintiff Costin worked in a hybrid role.  That is, one day per week, Plaintiff Costin reported in person to 555. W. 57th St., but ultimately reported to Headquarters.  During the rest of a typical workweek (i.e., the other four days in a working week), Plaintiff Costin worked remotely from her home in the Bronx, New York.

21.     Plaintiff Costin is a participant in the Severance Plan, has not yet signed the general release required by the plan, but has until December 23, 2024 to sign, per the "Review Period" set by Defendants in connection with her termination of employment.

22.     On or about September 24, 2024, Plaintiffs and the other at least 294 employees

who worked at or reported (either in-person or remote) to Headquarters, as well as another at least 50-60 employees who worked out of the NYC Surrounding Facilities, were notified by Defendants that their employment was terminated, effective on or about September 30, 2024. See **Ex. A, NYDOL WARN Notice.**

23.     Within 30 days of September 30, 2024, other of Defendants' employees who reported to Headquarters or Surrounding Facilities also had their employment terminated without Federal WARN or NY WARN compliant notice.  In NY DOL notices, Defendants did not include in their total of terminated employees, all remote workers, including those like Plaintiff Hagins who worked remotely out of state.

24.     In total, more than 500 of Defendants' employees who reported to Headquarters or Surrounding Facilities also were terminated in violation of the WARN Acts.

25.     On or about September 24, 2024, when Plaintiffs were first notified of the mass layoff, each was notified by Paramount that they would remain "on payroll" through the end of their respective Review Periods, even if they did not sign a "Separation Agreement" containing a general release of claims.  However, their Separation Agreement (consistent with the terms of the Severance Plan) stated that if they did not sign the general release before the end of the Review Period, Paramount retained the right to seek recoupment of all pay and benefits paid after September 30, 2024.

26.     Plaintiffs have been paid through Paramount payroll since their September 30, 2024 firings, and the payments were made pursuant to the terms of the Severance Plan.

27.     The Severance Plan document is attached hereto as **Exhibit B**.  The Severance Plan provides a formula of (at minimum) two weeks of severance pay per year of service at termination of employment.  **Severance Plan, Appx. A.**  However, the Severance Plan includes an illegal

offset provision, which states that "...[i]f [WARN] obligations exist, the employee's severance benefits under this Plan will be reduced accordingly, and if already paid, an appropriate amount of any benefits paid under this Plan shall be returned to the Company." *See* **Severance Plan, § 5.3**. This provision is nearly identical to severance plan provision rejected as illegal in *Gray*:

> If you become entitled to severance pay . . . on account of [a layoff] subject to WARN, then, to the extent you have been given less than WARN-required advance notice of the date your active services will actually terminate, you will be given a Paid Leave in Lieu of Notice for the balance of the WARN-required advance notice period. . . . When your Paid Leave in Lieu of Notice ends, you will then be entitled to severance pay [under the Plan] . . . , but the amount of severance pay otherwise payable will be reduced by the cash wages you received for your paid leave.

*Gray v. Walt Disney Co*., 915 F. Supp. 2d 725, 734 (D. Md. 2013).

28.     The Severance Plan requires that the plan participant sign a general release in order to be eligible for payment. **Severance Plan, Art. IV**. Plaintiffs have not yet signed any general release, though their Review Periods (or as defined in the Severance Plan, "Release Deadlines," *id*.) are currently open.

29.     If Plaintiffs were to sign general releases, they would be entitled to some severance payment (albeit reduced by WARN pay owed), but they would arguably waive the right to pursue their WARN claims. If Plaintiffs do not sign their general releases before the end of the Review Period, they preserve their WARN claims, but Defendants would retain the right to seek recoupment of the severance money paid to them during the Review Period.

## CLASS ACTION ALLEGATIONS

### The WARN Class

30.     Plaintiffs bring Counts I and II under Fed. R. Civ. P. 23 on behalf of themselves and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and NYLL § 860-g, who worked at, reported to, and/or received assignments from Defendants'

Headquarters at 1515 Broadway, New York, New York or surrounding sites at 513, 518, 524, 530, or 555 W. 57th St., New York, New York, and were terminated without cause beginning on or about January 17, 2024 through March 17, 2024, or August 30, 2024 through October 30, 2024, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff, termination of operations, and/or transfer of operations ordered (the "WARN Class").

31.    The persons in the WARN Class identified above ("WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

**32.**    Defendants employed and/or employ more than 7,000 people in the State of New York.  *See* **Ex. A, NYDOL WARN Notice.**

33.    On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member[1] at the time of his/her termination is contained in the books and records of the Defendants.

34.    Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following:

      a.    whether the members of the WARN Class were employees of Defendant(s) who worked at or reported to Defendants' Headquarters, or NYC Surrounding Facilities;

      b.    whether Defendants are a single employer or integrated enterprise;

      c.    whether Defendants unlawfully terminated the employment of the members of the WARN Class without cause on their part, and without giving them 90 days advance

---

[1] The "Classes" or "Class Members" jointly refers to the WARN Class, the Severance Plan Class, and members thereof.

written notice in violation of NY WARN, or the 60 days advance written notice in violation of Federal WARN;

d.      whether Defendants can prove that any exemptions under the WARN Acts apply;

e.      whether Defendants unlawfully failed to pay WARN Class Members 60 days' wages and benefits as required by the WARN Acts.

35.    Plaintiffs' claims are typical of those of the WARN Class Members.

36.    Plaintiffs, like other WARN Class Members, worked at Defendants' Headquarters or NYC Surrounding Facilities in Manhattan and were terminated without cause on or about February 13, 2024, effective on or about February 16, 2024, and/or on or about September 24, 2024, effective on or about September 30, 2024, due to the mass layoffs ordered by Defendants.

37.    Plaintiffs will fairly and adequately protect the interests of WARN Class Members as the representatives of the WARN Class. Plaintiffs have retained counsel competent and experienced in complex class actions, including relevant employment litigation.

38.    On or about September 30, 2024, Defendants Paramount and CBS Interactive terminated Plaintiffs' employment as part of a mass layoff as defined by 29 U.S.C. § 2101(a)(3) and NYLL § 860-a(4), for which WARN Class Members were entitled to receive 60 or 90 days advance written notice.

**The Severance Plan Class**

39.    Plaintiffs bring Count III pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 1132(a)(3), on behalf of themselves and other Severance Plan participants whose employment was terminated as part of a WARN-covered mass layoff at any time from January 1, 2024 through present (the "Severance Plan Class").

40.     The persons in the Severance Plan Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

41.     Common questions of law and fact exist as to members of the Severance Plan Class, including, but not limited to, the following:

f.      whether the members of the Severance Plan Class were employees of Defendant(s) and/or participants in the Severance Plan;

g.      whether the Severance Plan is covered by ERISA;

h.      whether Severance Plan Class Members lost employment due to WARN-covered mass layoffs;

i.      whether Severance Plan provisions offsetting WARN liability is violative of ERISA and/or WARN and/or is otherwise legally effective;

j.      whether Defendants may legally recoup severance paid to Severance Plan Class Members.

42.     Plaintiffs' claims are typical of those of the Severance Plan Class Members.

43.     Plaintiffs, like other Severance Plan Class Members, are participants in the Severance Plan, were subject to WARN-covered terminations of employment, and (unless relief is provided by the Court) are at risk of either being required by Defendants to repay their severance, or to waive their WARN claims.

44.     Plaintiffs will fairly and adequately protect the interests of Severance Class Members as their representatives. Plaintiffs have retained counsel competent and experienced in complex class actions and ERISA.

**The Classes Generally**

45.     Class certification of the Severance Plan Class is appropriate under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual Class Members would create: a risk of (1) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the parties opposing the class; and (2) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

46.     Class certification of the Severance Plan Class is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive or declaratory relief is appropriate with respect to the Severance Plan Class as a whole.  Plaintiff seeks an order: (1) declaring that any provisions in the Paramount Global Severance Plan reducing severance payments for any liability under the WARN Acts (or any similar state/local law) is null and void, as well as that any release signed pursuant to the Severance Plan excludes claims under the WARN Acts; (2) reforming the Paramount Global Severance Plan such that any provisions reducing severance payments for any liability under the WARN Acts are removed from the terms of the plan; and (3) enjoining Defendants from seeking repayment of any amounts under the Paramount Global Severance Plan from any plan participant whose employment was terminated by a mass layoff or plant closing covered by the WARN Acts. If granted, such relief would clearly apply to and benefit the Severance Plan Class as a whole.

47.     Class certification of the Classes is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class Members predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other

available methods for the fair and efficient adjudication of this litigation.

48.    Class certification will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  The Classes are readily identifiable from Defendants' own employment records.  Prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

49.    A class action is further superior to other available methods for adjudication of this controversy in that joinder of all class members is impractical.  Furthermore, the amounts at stake for many of the Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

50.    Without a class action, Defendants will retain the benefits of their wrongdoing, which will result in further damages to Plaintiffs and Class Members.  Plaintiffs envision no difficulty in the management of this action as a class action.

51.    Plaintiffs intend to send notice to all members of the Classes to the extent required and permitted by Rule 23 of the Federal Rules of Civil Procedure.

### COUNT I
### VIOLATION OF THE FEDERAL WARN ACT
### (Plaintiffs and the WARN Class v. Paramount and CBS Interactive)

52.    Plaintiffs reallege and incorporate by reference all of the allegations contained within the preceding paragraphs.

53.     At all relevant times, Defendants Paramount and CBS Interactive employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

54.     A "mass layoff" means a reduction in force which is not the result of a transfer or termination of operations and results in employment loss at an establishment during any 30-day period for 50 or more of the employees at or reporting to the place of employment. 29 U.S.C. § 2101(a)(3).

55.     At all relevant times, Defendants Paramount and CBS Interactive were each an "employer," within the meaning of 29 U.S.C. § 2101(a)(1).

56.     Defendants Paramount and CBS Interactive are together a single employer and an integrated entity, in that they share the same or similar facilities (Headquarters and NYC Surrounding Facilities), the same or similar employees, possessed common financial ownership and control, and common human resources and management personnel.

57.     Plaintiffs and each Federal WARN Class Member are "aggrieved employees" of Defendants as defined in 29 U.S.C. § 2104 (a)(7).

58.     Defendants Paramount and CBS Interactive continued to operate their business until and after they decided to order multiple mass layoff(s) at Headquarters and NYC Surrounding Facilities.

59.     On or about September 30, 2024 and within 30 days thereof, Defendants Paramount and CBS Interactive ordered a mass layoff at Headquarters and NYC Surrounding Facilities, which resulted in the loss of employment of more than 500 individuals.

60.     Additionally, on or about February 16, 2024 and within 30 days thereof, Defendants Paramount and CBS Interactive ordered another mass layoff at Headquarters and

NYC Surrounding Facilities, which resulted in the loss of employment of more than 700 individuals.

61.    Defendants' Paramount and CBS Interactive's mass layoffs or plant closings at Headquarters and NYC Surrounding Facilities resulted in "employment losses," as defined by 29 U.S.C. §2101(a)(2), (3).

62.    In each such mass layoff or plant closing, at least 500 of Defendants Paramount and CBS Interactive's employees at Headquarters and NYC Surrounding Facilities, as defined by 29 U.S.C. § 2101(a)(8), were terminated.

63.    Plaintiffs and WARN Class Members were terminated by Defendants Paramount and CBS Interactive without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff(s) ordered by Defendants at Headquarters and NYC Surrounding Facilities.

64.    Defendants Paramount and CBS Interactive were required by the Federal WARN Act to give the Plaintiffs and the WARN Class Members at least 60 days advance written notice of their terminations.

65.    Plaintiffs and WARN Class Members have suffered damages by Defendants' failure to comply with the Federal WARN Act's requirements.

**COUNT II**
**VIOLATION OF THE NEW YORK WARN ACT**
**(Plaintiffs and the New York WARN Class v. Paramount and CBS Interactive)**

66.    Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

67.    Under NY WARN, a "mass layoff" means a reduction in force which is not the result of a plant closing and which results in an employment loss at a single site of employment during any 30-day period for at least 250 or more full-time employees.  NYLL § 860-a(4).

68.     At all relevant times, Defendants Paramount and CBS Interactive were each an "employer," within the meaning of NY WARN.

69.     Defendants Paramount and CBS Interactive are together a single employer and an integrated entity, in that they share the same or similar facilities (Headquarters and NYC Surrounding Facilities), the same or similar employees, possessed common financial ownership and control, and common human resources and management personnel.

70.     NY WARN states that if an employer provides any employee with less than 90 days advanced notification of a plant shutdown or mass layoff, the employer shall provide that employee with 60 calendar days of wages and benefits.  NYLL § 860-g.

71.     Defendants Paramount and CBS Interactive failed to provide Plaintiff and the Class Members with the 90-days written notice that is required by NY WARN for the mass layoffs that occurred at Headquarters and NYC Surrounding Facilities on February 13, 2024 and within 30 days thereof, as well as on September 24, 2024 and within 30 days thereof.  NYLL § 860-b.

72.     Plaintiffs and WARN Class Members have suffered damages by Defendants' failure to comply with NY WARN's requirements.

**COUNT III**
**VIOLATION OF ERISA, 29 U.S.C. § 1132(a)(3)**
**Injunctive and Other Appropriate Equitable Relief**
**(Plaintiffs and the Severance Plan Class v. Defendants)**

73.     Plaintiffs reallege and incorporate all prior paragraphs as if fully set forth herein.

74.     29 U.S.C. § 1132(a)(3)(A) empowers a plan participant, such as Plaintiffs, "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan."

75.     29 U.S.C. § 1132(a)(3)(B) empowers a plan participant, such as Plaintiffs, "to

obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

76.     As described above, Defendants Paramount and CBS Interactive maintain Defendant Severance Plan which provides a formula of (at minimum) two weeks of severance pay per year of service at termination of employment. **Severance Plan, Appx. A.** However, the Severance Plan includes an illegal offset provision, which states that "...[i]f [WARN] obligations exist, the employee's severance benefits under this Plan will be reduced accordingly, and if already paid, an appropriate amount of any benefits paid under this Plan shall be returned to the Company." See **Ex. B, Severance Plan, § 5.3**. This and similar plan provisions violate both ERISA and Federal WARN, which only allows (in relevant part) an offset for "voluntary and unconditional" payments, 29 U.S.C. § 2104(a)(2)(B), not payments which are owed according to a preexisting legal obligation (such as benefits owed under an ERISA severance plan). See, e.g., *Gray v. Walt Disney Co*., 915 F. Supp. 2d 725, 734 (D. Md. 2013) ("Many courts have indeed held that ERISA-governed severance benefits may not offset inadequate notice under WARN because such benefits were already legally owed the employees.") (collecting cases).

77.     Plaintiffs are participants in the Severance Plan and have received automatic payments under the Severance Plan during the Review Period, but are in jeopardy of being required to pay back these benefits to Paramount if the Court determines that Defendants violated the WARN Acts or if they do not sign a general release within the Review Period.

78.     Plaintiffs seek a declaration that any provisions in the Paramount Global Severance Plan reducing severance payments for any liability under the WARN Acts (i.e., offset provisions) are null and void, as well as that any releases signed in connection with the plan preserve claims under the WARN Acts.

79.     Plaintiffs seek an injunction prohibiting Defendants from seeking repayment of any amounts under the Paramount Global Severance Plan from any plan participant whose employment was terminated by a mass layoff or plant closing covered by the WARN Acts.

80.     Plaintiffs seek an order reforming the Paramount Global Severance Plan such that any provisions reducing severance payments for any liability under the WARN Acts are removed from the terms of the plan.

81.     Without an injunction or reformation removing the illegal offset provision, Plaintiffs and the Severance Plan Class would suffer irreparable harm by facing a Hobson's choice: (1) accept the terms of the Severance Plan by signing a general release, receiving severance which is reduced by WARN monies owed (and giving up the right to sue on their WARN claim); or (2) refuse to sign a general release and risk Paramount seeking recoupment of the severance monies paid to the participant.  In either instance, Plaintiffs and the Severance Plan Class would not receive both WARN pay and Severance Plan pay.

82.     Monetary relief is inadequate to compensate Plaintiffs and the Severance Plan Class for their injuries because in either instance (signing a general release or not signing a general release), Plaintiffs would not be entitled to sue for both payments owed under WARN and full Severance Plan payments owed.

83.     Any harm caused by an injunction is outweighed by the harm that would be caused in the absence of an injunction.

84.     An injunction would be in the public interest, as federal labor policy holds that offset provisions such as those at issue in this case are void and undermine the policies of WARN and ERISA.

85.     Wherefore, Plaintiffs, on behalf of themselves and the Severance Plan Class, seek

an order: (1) declaring that any provisions in the Paramount Global Severance Plan reducing severance payments for any liability under the WARN Acts is null and void, as well as excluding claims under the WARN Acts (or any similar state/local law) from the scope of any general releases signed in connection with the plan; (2) reforming the Paramount Global Severance Plan such that any provisions reducing severance payments for any liability under the WARN Acts are removed from the terms of the plan; and (3) enjoining Defendants from seeking repayment of any amounts under the Paramount Global Severance Plan from any plan participant whose employment was terminated by a mass layoff or plant closing covered by the WARN Acts.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B. Notice to all putative Class Members pursuant to Fed. R. Civ. P. 23;

C. Designation of the Plaintiffs as Class Representatives on behalf of the WARN Class and the Severance Plan Class;

D. A declaration that any provisions in the Paramount Global Severance Plan reducing severance payments for any liability under the WARN Acts is null and void, as well as excluding claims under the WARN Acts (or any similar state/local law) from the scope of any general releases signed in connection with the plan;

E. An order reforming the Paramount Global Severance Plan such that any provisions reducing severance payments for any liability under the WARN Acts are removed from the terms of the plan;

F. An order enjoining Defendants from seeking repayment of any amounts under the

18

Paramount Global Severance Plan from any plan participant whose employment was terminated by a mass layoff or plant closing covered by the WARN Acts;

G. Appointment of the undersigned attorneys as Class Counsel for the Classes; and

H. A judgment against Defendants in favor of the Plaintiffs and WARN Class Members in an amount equal to the sum of their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension, 401(k) and healthcare contributions and other benefits for a period of 60 calendar days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Acts.

Dated: October 24, 2024

Respectfully Submitted,

/s/ James E. Goodley
James E. Goodley (NY Reg. No. 5724083)
Ryan P. McCarthy*
GOODLEY MCCARTHY LLC
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 394-0541
james@gmlaborlaw.com
ryan@gmlaborlaw.com

*Attorneys for Plaintiffs and the Classes*

*\* Pro Hac Vice Application to be Filed*