**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIAN HAGINS and SHADAJAH COSTIN, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PARAMOUNT GLOBAL, CBS INTERACTIVE INC., and PARAMOUNT GLOBAL SEVERANCE PLAN,<br><br>Defendants. | Case No. 1:24-cv-07493<br><br>Honorable Vernon S. Broderick<br><br>**Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1
FACTUAL BACKGROUND ........................................................................................ 3
I. THE SEVERANCE PLAN ........................................................................................ 3
II. THE 2024 LAYOFFS ............................................................................................. 5
ARGUMENT .............................................................................................................. 7
I. STANDARD OF REVIEW ........................................................................................ 7
II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE WARN ACTS ...................... 8
A. The NY WARN Act does not apply to extraterritorial workers like Hagins ......... 9
B. The WARN Acts do not require employers to keep employees working throughout their notice periods ............................................................ 10
C. Plaintiffs conflate pay and benefits paid to them pursuant to the WARN Acts with severance payments payable under the Plan ....................................... 12
III. PLAINTIFFS' COUNT III FAILS TO STATE A CLAIM BECAUSE PARAMOUNT'S SEVERANCE PLAN DOES NOT VIOLATE ERISA ..................... 15
A. ERISA vests employers with discretion on how to define employee welfare benefits, like severance, that they choose to offer ................................. 16
B. Plaintiffs' belief that the Plan violates ERISA appears to hinge on one inapplicable and erroneously decided case ........................................................ 19
CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1199 SEIU United Healthcare Workers East v. South Bronx Mental Health Council, Inc.*,
Case No. 13-cv-02768, 2013 WL 6003731 (S.D.N.Y. Nov. 13, 2013)....................................8

*Alessi v. Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981)....................................16, 17, 20, 21

*Anderson v. Xerox Corp.*,
29 F. Supp. 3d 323 (W.D.N.Y. 2014), *aff'd*, 614 F. App'x 38 (2d Cir. 2015) ........................18

*Andrews v. Realogy Corp. Severance Pay Plan for Officers*,
No. 13-cv-08210, 2015 WL 736117 (S.D.N.Y. Feb. 20, 2015) ....................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................7

*Braden v. LSI Logic Corp.*,
340 F. Supp. 2d 1066 (N.D. Cal. 2004) ....................................17, 20, 21, 22

*Burns v. Stone Forest Indus., Inc.*,
147 F.3d 1182 (9th Cir. 1998) ....................................8

*Castro v. Chicago Hous. Auth.*,
360 F.3d 721 (7th Cir. 2004) ....................................20

*Chain v. N.E. Freightways, Inc.*,
No. 16-cv-3371, 2020 WL 7481142 (S.D.N.Y. Dec. 18, 2020) ....................................11

*Ciarlante v. Brown & Williamson Tobacco Corp.*,
143 F.3d 139 (3d Cir. 1998)....................................19

*Coelman v. Optum Inc.*,
No. 22-cv-05664, 2023 WL 6390665 (S.D.N.Y. Oct. 1, 2023)....................................9, 10

*Davis v. Eastman Kodak Co.*,
No. 04-cv-06098, 2007 WL 8098431 (W.D.N.Y. July 19, 2007) ....................................18

*Ellis v. DHL Exp. Inc.*,
633 F.3d 522 (7th Cir. 2011) ....................................17

*General Elec. v. N.Y. Dept. of Lab.*,
891 F.2d 25 (2d Cir. 1989)....................20

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*,
858 F. App'x 432 (2d Cir. 2021)....................16

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
286 A.D.2d 229 (N.Y. App. Div. 2001)....................9

*Gray v. Walt Disney Co.*,
915 F. Supp. 2d 725 (D. Md. 2013)....................19, 20, 22

*Hamilton v. Air Jamaica, Ltd.*,
945 F.2d 74 (3d Cir. 1991)....................16

*Harrison v. Met. Life Ins. Co.*,
417 F. Supp. 2d 424 (S.D.N.Y. 2006)....................3

*Hishon v. King & Spalding*,
467 U.S. 69 (1984)....................8

*HMI Mech. Sys., Inc. v. McGowan*,
266 F.3d 142 (2d Cir. 2001)....................16, 20

*Kaul v. Hanover Direct Inc.*,
296 F. Supp. 2d 506 (S.D.N.Y. 2004)....................18

*Kirk v. Readers Digest Ass'n, Inc.*,
57 F. App'x 20 (2d Cir. 2003)....................18

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001)....................20

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996)....................3, 16, 17

*Long v. Dunlop Sports Grp. Ams., Inc.*,
506 F.3d 299 (4th Cir. 2007)....................11, 12

*Magnuson v. Newman*,
Case No. 10-cv-06211, 2013 WL 5380387 (S.D.N.Y. Sept. 25, 2013)....................9

*Morton v. Vanderbilt Univ.*,
809 F.3d 294 (6th Cir. 2016)....................11

*Okun v. Montefiore Med. Ctr.*,
793 F.3d 277 (2d Cir. 2015)....................16

*Pennington v. Fluor Corp.*,
19 F.4th 589 (4th Cir. 2021) ....................................................................................11

*Rapaport v. Asia Elecs. Holding Co.*,
88 F. Supp. 2d 179 (S.D.N.Y. 2000)...................................................................7, 13

*Reichelt v. Emhart Corp.*,
921 F.2d 425 (2d Cir. 1990).......................................................................................16

*Shuriz Hishmeh, M.D., PLLC v. Horizon Blue Cross Blue Shield of N.J.*,
No. 19-cv-04727, 2020 WL 13886011 (E.D.N.Y. Sept. 28, 2020) .........................................3

*Singh v. Deloitte LLP*,
– F.4th –, No. 23-01108, 2024 WL 5049345 (2d Cir. Dec. 10, 2024).....................................3

*Soto v. Disney Severance Pay Plan*,
26 F.4th 114 (2d Cir. 2022) .................................................................................16, 17

*Tischmann v. ITT/Sheraton Corp.*,
145 F.3d 561 (2d Cir. 1998).......................................................................................17

*Tobin v. Ravenswood Aluminum Corp.*,
838 F. Supp. 262 (S.D.W.Va. 1993)..................................................................19, 20

*Williams v. Phillips Petrol. Co.*,
23 F.3d 930 (5th Cir. 1994) .......................................................................................11

*Young v. CIGNA Co.*,
No. 98-cv-02903, 1998 WL 895766 (S.D.N.Y. Dec. 21, 1998) ..............................................4

**Statutes**

29 U.S.C. § 1132 ......................................................................................................15

29 U.S.C. § 1144 .......................................................................................................20

29 U.S.C. §§ 2101 *et seq.*...............................................................................................8

29 U.S.C. § 2102 ...................................................................................................8, 10

29 U.S.C. § 2104 .................................................................................................19, 20

N.Y. Lab. Law §§ 860 *et seq.* ..........................................................................................8

N.Y. Lab. Law § 860-A ...................................................................................................9

N.Y. Lab. Law § 860-B ................................................................................................8, 9

N.Y. Lab. Law § 860-G .................................................................................................19

**Regulations**

20 C.F.R. § 639.1(a)....8, 10

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-1.1....9

N.Y. Comp. Codes R. & Regs. tit. 12, § 921-2.2....10

**Other Authorities**

54 Fed. Reg. 16042....10, 11

## INTRODUCTION

When they filed their First Amended Class Action Complaint ("Complaint"), Plaintiffs Julian Hagins ("Hagins") and Shadajah Costin ("Costin") were current employees of Defendant Paramount Global or its subsidiaries ("Paramount"). Both Plaintiffs allege that they received a notice ("the Notice") on September 24, 2024, that their employment would be terminated in the future. The Notice explained that Plaintiffs could stop working on September 30, 2024, that their termination of employment would be effective on their "Separation Date" (November 24, 2024 in Hagins' case and December 23, 2024 in Costin's), and that Plaintiffs would continue to receive their full pay and benefits until their Separation Date. Plaintiffs also were told that if they executed a Separation Agreement with a release of claims as of their Separation Date, they would be eligible for severance benefits—additional money and outplacement services—pursuant to the terms of the Paramount Global Severance Plan ("the Plan"), a welfare benefit plan governed by ERISA.

Plaintiffs do not allege that they have not actually received the full pay and benefits (60 or 90-days' worth) they were told they would receive in the Notice. Nor do Plaintiffs allege that they signed the Separation Agreement required under the Plan in order to receive any severance benefits. Nevertheless, Plaintiffs filed this lawsuit alleging various claims under the Federal and New York WARN Acts ("the Warn Acts") and alleging that the severance benefit formula in the Plan is unlawful. Plaintiffs' claims hinge on two fundamental misconceptions and fail as a matter of law.

First, Plaintiffs claim that the salary and benefits paid to them between the date that Paramount notified them of their upcoming layoffs on September 24 and their actual Separation Dates (which occurred—or, in Costin's case, will occur—months later) constituted severance benefits under the Plan that they would only be entitled to if they signed the Separation Agreement

under the Plan. But that assertion is flatly contradicted by the actual Notice they received and the Separation Agreement, both of which are cited and incorporated into the Complaint:

> *Whether or not you sign your Separation Agreement*, you will remain on payroll (at your current base salary) and continue to participate in all Company employee benefit plans in which you currently participate, including medical, dental, basic life insurance and 401(k) until through November 25, 2024.

(Ex. 4[1] at 1 (emphasis added) (One Sheet); Ex. 5 at 1 (same); ECF 11 ("Compl."), ¶ 25 (quoting and relying on Exs. 4–5); *see also* Exs. 2–3 (WARN notices); Compl. ¶¶ 25, 26 (quoting and relying on Exs. 2–3).)

> *Regardless of whether you execute this Separation Agreement*, you will remain on payroll (at your current base salary) and continue to participate in all Company employee benefit plans in which you currently participate, including medical, dental, basic life insurance and 401(k) until your Separation Date.

(Ex. 6, § 1 (emphasis added); Compl., ¶¶ 19, 21, 25, 28, 29, 81 (quoting and referencing Separation Agreements and general release contained therein).) Plaintiffs remained employed for 60 or 90 days (Costin's 90 days end about one week after the filing of this Motion) after being notified of their future impending layoff. Plaintiffs received their full pay and benefits for those 60 or 90 days regardless of whether they signed a Separation Agreement. The WARN Acts require nothing more.

Second, Plaintiffs claim that ERISA prohibits the Plan from adopting a benefit formula that includes the amount of New York or Federal WARN pay an employee receives as a variable in determining the amount of severance benefits due under the Plan. Again, Plaintiffs are wrong as a matter of law. ERISA does not regulate the formula for providing severance benefits under an ERISA plan or the conditions for receiving it. As the Supreme Court has explained, "[n]othing in

---

[1] Exhibits 1–7 of the Declaration of Jeremy Blumenfeld, filed in support of this Motion, are cited herein as Ex. 1 through Ex. 7.

ERISA requires employers to establish employee benefit plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). And the Supreme Court in *Spink* also made clear that it is lawful for an ERISA plan—like the Plan here—to condition the payment of benefits on an employee executing a release of claims. *Id.* (*See also infra* at § III.A.)

Plaintiffs do not allege that the Plan terms entitle them to greater benefits. And if Plaintiffs are not happy with the severance benefits available through the Plan, they do not have to sign the Separation Agreements. But their claim alleging that the Plan was required to provide them greater benefits than those provided under the Plan terms is not cognizable as a matter of law.

For each and all of the foregoing reasons, and those explained in further detail below, the Complaint should be dismissed.

## FACTUAL BACKGROUND[2]

### I. The Severance Plan

The Paramount Global Severance Plan "provide[s] severance benefits to eligible employees of the Company or any participating subsidiaries or affiliates following a qualifying

---

[2] This Factual Background is based on the well-pled factual allegations in the Amended Class Action Complaint ("Complaint") (ECF 11), as well as the Paramount Global Severance Plan, Costin's Separation Agreement, and communications with Plaintiffs that are cited and incorporated into the Complaint. (Compl. ¶ 25 (quoting from One Sheet); *id.* ¶¶ 25, 26 (quoting and relying on WARN notices); *id.* ¶¶ 19, 21, 25, 28, 29, 81 (quoting and relying on Separation Agreement and general release contained therein).) These documents are properly considered when evaluating Defendants' motion to dismiss. *See Harrison v. Met. Life Ins. Co.*, 417 F. Supp. 2d 424, 431 (S.D.N.Y. 2006) ("In deciding a Rule 12(b)(6) motion, courts may consider any written instrument attached to the complaint as an exhibit or any statement or documents incorporated in it by reference and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." (cleaned up)); *Singh v. Deloitte LLP*, No. 23-01108, 2024 WL 5049345, *5 (2d Cir. Dec. 10, 2024) (explaining that where the plaintiff alleged that defendants "violated their duty of prudence by failing adequately to manage [an ERISA-governed] plan's recordkeeping and administrative fees," it was appropriate at the motion-to-dismiss stage for the court to consider disclosure documents filed by the ERISA plan and its alleged comparators because they were integral to the plaintiff's claims, despite plaintiff's decision not to attach those documents to or mention them in the complaint); *Shuriz Hishmeh, M.D., PLLC v. Horizon Blue Cross Blue Shield of N.J.*, No. 19-cv-04727, 2020 WL 13886011, at *2 (E.D.N.Y. Sept. 28, 2020) (holding that ERISA plan could be considered as part of a Rule

termination of employment." (Ex. 1, Art. I.) An employee becomes "eligible for Severance under the Plan . . . if such Employee experiences a Termination of Employment or is placed on leave in connection with WARN ('WARN Leave') and satisfies the conditions of Article IV." (*Id.* at Art. III.) These conditions include, among other things, "executing an agreement and general release in such form acceptable to the Company." (*Id.* at Art. IV.)

Assuming the employee executes the release and satisfies the other eligibility conditions, the employee's severance will be calculated using a formula set out in the Plan: "Each eligible employee . . . shall be entitled to two (2) Weeks of Base Pay for each Year of Service,[3] subject to . . . a maximum of 52 Weeks of Base Pay," and a minimum number of weeks depending on the employee's job title. (*Id.* § 5.1(a); *id.* at App'x A (§ 1).) This Severance is not, however, "intended to duplicate any . . . advanced notice obligations that the Company many have . . . under applicable federal, state, or local law, including without limitation under WARN." (*Id.* § 5.3.) "If other such obligations exist, the employee's *severance benefits under this Plan* will be reduced accordingly, and if already paid, an appropriate amount of any benefits paid *under this Plan* shall be returned to the Company." (*Id.* (emphasis added).) Even in that circumstance, the Plan provides that an eligible employee's severance "benefits will not be reduced or offset so as to result in less than

---

12(b)(6) motion to dismiss, despite not being attached to the complaint or incorporated there by reference, because the plaintiff's claims relied on contractual obligations arising under the plan).

Furthermore, each document attached to the Declaration of Jeremey Blumenfeld, filed in support of this Motion, was filed by Plaintiffs in support of their withdrawn Motion for Preliminary Injunction (ECF 20), evidencing their reliance on these documents in bringing suit. *Young v. CIGNA Co.*, No. 98-cv-02903, 1998 WL 895766, at *1 (S.D.N.Y. Dec. 21, 1998) (considering severance plan and employer's written policies attached to opposition to motion to dismiss, despite the fact that the plaintiff had not attached them to or cited them in his complaint, because he "apparently relied on these documents in bringing suit," making them "integral to the complaint").

[3] The Plan defines "Years of Service" as the "number of full twelve (12) month periods since the Employee's original date of hire" and "no credit [is] given for fractions of a year." (Ex. 1, § 2.27.)

one week of severance benefits provided the Release has been received by the Release Deadline, with the intention that the remaining severance benefits serve as consideration for the Release." (*Id.*)

**II. The 2024 Layoffs**

Paramount hired Hagins—who worked from his home in Orange, California, throughout his employment—in March 2022. (Compl. ¶ 11.) It hired Costin—who worked from New York, New York—in May 2017. (Compl. ¶ 12.)

On September 24, 2024, Plaintiffs received a Notice that they would be laid off due to restructuring. (Compl. ¶ 25.) The Notice they received included a "One Sheet," "WARN Notice," and "FAQs." (Exs. 2–5, 7.) Plaintiffs also received a Separation Agreement that they were required to execute if they wanted severance benefits under the Plan. (Compl. ¶ 25; *see, e.g.*, Ex. 6.)

The Notices provided that Plaintiffs' "last day in the office will be September 30, 2024." (Exs. 2–3.) But "[w]hether or not you sign your Separation Agreement, you will remain on payroll (at your current base salary) and continue to participate in all Company employee benefit plans in which you currently participate" until their "Separation Date"—November 24, 2024 in Hagins' case and December 23, 2024 in Costin's. (Ex. 4 at 1; Ex. 5 at 1.) In addition to remaining on payroll until their Separation Dates, Paramount offered Hagins severance pay totaling "1 week of salary" if he executes the Separation Agreement. (Ex. 4 at 1.) Paramount offered Costin "2 week(s) of Severance" if she executes the Separation Agreement. (Ex. 5 at 1.)

The terms of the FAQs and Separation Agreement[4] also clarify that the pay and benefits they received before their "Separations Date" was not severance money conditioned on their execution of a release:

Frequently Asked Questions

2) Q. How does WARN impact me?

A. Following your Last Day of work, you will be placed on a WARN On Leave Period. *During this time, you will still be considered an active employee, receiving your current base salary, and maintaining participation in all Company employee benefit plans* . . . . *Your employment with Paramount Global will officially end at the conclusion of the WARN On Leave Period, which will be your Separation Date.*

* * *

4) Q. Do I need to review and sign my Separation Agreement to receive pay and benefits during my WARN On Leave Period?

A. If you have received a WARN notice as part of your exit package and as outlined in your Separation Agreement, *you will receive pay and benefits through your WARN On Leave Period, regardless of if you sign the Separation Agreement or not.*

(Ex. 7 at 1 (emphasis added).)

Separation Agreement

1. *Regardless of whether you execute this Separation Agreement*, you will remain on payroll (at your current base salary) and continue to participate in all Company employee benefit plans in which you currently participate, including medical, dental, basic life insurance and 401(k) until your Separation Date . . . (the "On Leave Period").

2. *In addition to your pay and benefits during the On Leave Period*, in consideration for your timely signing this Separation Agreement and complying with its terms, the Company will provide you with additional compensation and benefits, the value of which exceeds payment or remuneration to which you were already entitled [including Severance]. This additional compensation and

[4] Both Hagins and Costin allege that they were given a Separation Agreement containing a general release, which they must sign to be eligible for severance benefits under the Plan. (Compl. ¶¶ 19, 21, 25, 28–29, 81.).

> benefits is provided in accordance with the Paramount Global Severance Plan (the "Plan"), unless otherwise noted.

(Ex. 6, §§ 1, 2 (emphasis added).)

Plaintiffs admit that they have received their usual pay and benefits for 60 or 90 days after receiving the Notices. (Compl. ¶ 26.) And Plaintiffs do not allege that they signed the Separation Agreements that are required to be eligible for severance benefits under the Plan. (*Id.* ¶¶ 19, 21.) In Hagins' case, the deadline to sign the Separation Agreement was November 24, 2024. (*Id.* ¶ 19.) In Costin's case, the deadline is December 23, 2024. (*Id.* ¶ 21.)

## ARGUMENT

### I. Standard of Review.

In assessing a Rule 12(b)(6) motion, "a court must accept as true all of the allegations contained in a complaint," but that tenet "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, if documents attached to or relied on in the complaint "contradict the allegations of the . . . complaint, the documents control and this Court need not accept as true the allegations in the . . . complaint." *Rapaport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000). Here, that includes the Plan, the Separation Agreements, and the Notices that Plaintiffs allege they received and upon which their claims are based. (Compl. ¶¶ 19, 21, 25, 27–29, 71, 81; *see also supra* at 3 n.2.)

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (cleaned up). That is to say, if it appears from the face of the complaint that a

plaintiff cannot prove a set of facts that would entitle him or her to the relief sought, the court should dismiss the plaintiffs' claims. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

**II. Plaintiffs Fail to State a Claim Under the WARN Acts.**

Congress enacted the Worker Adjustment and Retraining Notification Act ("Federal WARN Act"), 29 U.S.C. § 2101 *et seq.*, to protect "workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs," ensuring workers a period of financial security during which to find alternative employment. 20 C.F.R. § 639.1(a) ("Advance notice provides workers . . . some transition time to . . . seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market."); *see also 1199 SEIU United Healthcare Workers East v. South Bronx Mental Health Council, Inc.*, Case No. 13-cv-02768, 2013 WL 6003731, at *5 (S.D.N.Y. Nov. 13, 2013) ("the WARN Act . . . seeks to provide 'a two-month uninterrupted income stream facilitating a job search'" (quoting *Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182, 1184–85 (9th Cir. 1998))).

New York later enacted the New York State Worker Adjustment and Retraining Notification Act, N.Y. Lab. Law §§ 860 *et seq.* ("NY WARN Act"), which mirrors its federal counterpart with only a few material exceptions. Most importantly for the purposes of this Motion, the NY WARN Act requires employers to provide affected employees 90-days' notice of a mass layoff or plant closing, as opposed to the 60-days' notice required under the Federal WARN Act. *Compare* N.Y. Lab. Law § 860-B(1) *with* 29 U.S.C. § 2102(a).

Here the Complaint and the documents incorporated into it confirm that (1) Hagins is not subject to the NY WARN Act because he lived and worked exclusively in California, (2) Paramount complied with any obligations it had to Hagins and Costin under the Federal WARN Act, and (3) Paramount complied with any obligations it had to Costin under the NY WARN Act.

**A. The NY WARN Act does not apply to extraterritorial workers like Hagins.**

Hagins cannot state a claim for a violation of the NY WARN Act because it does not apply to employees, similar to himself, who perform their work from outside the State of New York. It is a "settled rule of statutory interpretation [under New York law] that unless expressly stated otherwise, 'no legislation is presumed to be intended to operate outside the territorially jurisdiction of the state . . . enacting it.'" *Magnuson v. Newman*, Case No. 10-cv-06211, 2013 WL 5380387, at *5 (S.D.N.Y. Sept. 25, 2013) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 286 A.D.2d 229, 230 (N.Y. App. Div. 2001)) (holding New York State Labor Law "does not apply to people who work outside of the State of New York"). And no provision in the NY WARN Act or its corresponding regulations contemplates its application to out-of-state workers.

To the contrary, as explained in *Coleman v. Optum Inc.*, an "'affected employee' under the [NY WARN Act] must 'experience an employment loss as the result of a proposed *plant closing* or *mass layoff*,'" the definitions of which contemplate "the termination of workers at a single site of employment," *i.e.*, employees working "within a single building, working in locations in proximity to each other (such as an industrial park), or employees whose primary duties require travel." Case No. 22-cv-05664, 2023 WL 6390665, at *8–9 (S.D.N.Y. Oct. 1, 2023) (emphasis added) (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 921-1.1(a)); *see also* N.Y. Lab. Law § 860-A(1), (4), (6); N.Y. Comp. Codes R. & Regs. tit. 12, § 921-1.1(p). Based on this observation, the *Coleman* court concluded that the language of the NY WARN Act does not overcome New York's presumption against extraterritorial application. *Coleman*, 2023 WL 6390665, at *8 (holding the NY WARN Act "only covers work performed in the state" and "cannot be applied exterritorialy.").

Other sections of the NY WARN Act confirm this conclusion. For example, the NY WARN Act requires employers to provide WARN notice not only to affected employees, but also

to various entities that provide services to the residents of the locality in which the "site of employment is located," including the New York Commissioner of Labor, local school districts, local officials, and emergency service providers. N.Y. Comp. Codes R. & Regs. tit. 12, § 921-2.2(d). All of these officials and service providers are empowered to use their resources for the benefit of individuals in the State of New York, not for the benefit of individuals like Hagins—who admits that he "resides in Orange, California" and "reported remotely from his home in Orange, California" during "all relevant time periods." (Compl. ¶ 11.) As the NY WARN Act does not indicate that it was intended to operate extraterritorially, Hagins, as a California-based worker, cannot maintain an action for a violation of the NY WARN Act. *See Coleman*, 2023 WL 6390665, at *8–9. He is only entitled, therefore, to the 60-days' WARN notice available under the Federal WARN Act and not the 90 days available under the NY WARN Act.

### B. The WARN Acts do not require employers to keep employees working throughout their notice periods.

Both the Federal and NY WARN Acts require employers to notify employees subject to a mass layoff of their forthcoming employment loss either 60 (federal) or 90 (New York) days before actually terminating an employee's employment. 29 U.S.C. § 2102(a)(1); N.Y. Lab. Law § 860-B(1). Here, Paramount did exactly what was required, so Plaintiffs' claims fail as a matter of law.

Nevertheless, Plaintiffs seem to claim the WARN Acts require employers to keep employees actively *working*—that is, requiring employees to also perform services—throughout their notice periods. But such an interpretation ignores the terms of the WARN Acts themselves and to the case law interpreting them. The purpose of the WARN Acts is to "provide workers and their families some transition time to . . . seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a); Worker Adjustment and Retraining Notification, 54 Fed. Reg. 16042, 16048

(Apr. 20, 1989) ("The question also has been raised as to whether an employment loss occurs if an employee *retains full pay and benefits* . . . but is not required to report to work. DOL notes that neither WARN nor the regulations dictate the nature of work to be performed—or whether work must be performed—during a period of employment after notice of an impending plan closing or mass layoff has been given." (emphasis added)); *Chain v. N.E. Freightways, Inc.*, No. 16-cv-3371, 2020 WL 7481142, at *7 (S.D.N.Y. Dec. 18, 2020) (deferring to DOL's interpretation of the Federal WARN Act—54 Fed. Reg. at 16048).

Recognizing these facts, the Courts of Appeals that have considered the issue have explained that "[f]ully-paid excused leave complies with [the WARN Act's] purposes" and "cannot harm an employee." *Williams v. Phillips Petrol. Co.*, 23 F.3d 930, 935 (5th Cir. 1994) (holding employer did not violate WARN Act where employer placed impacted employees on "excused leave with pay" during the WARN notice period). As such, an employer's "decision to continue paying all benefits and wages for 60 days without requiring work in exchange" does not "constitute an 'employment termination' under the [Federal WARN] Act" and "entirely accords with the language, purpose, and structure of the WARN Act, as well as the Department of Labor's authoritative interpretation of it." *Long v. Dunlop Sports Grp. Ams., Inc.*, 506 F.3d 299, 303 (4th Cir. 2007); *see also Morton v. Vanderbilt Univ.*, 809 F.3d 294, 295–96 (6th Cir. 2016) (holding that employer's decision to place employees on "paid leave" for the duration of their WARN notice periods complied with and comported with the purpose of the Federal WARN Act); *Pennington v. Fluor Corp.*, 19 F.4th 589, 596 (4th Cir. 2021) (holding employer "complied with the WARN Act by providing 60 days of compensation beginning on the day of the project's closure, thereby satisfying its obligations under the statute").

That is precisely what Paramount did here. "Following [their] Last Day of work, [Plaintiffs were] placed on a WARN On Leave Period" during which there were "still considered . . . active employee[s], receiving [their] current base salary, and maintaining participation in all Company employee benefit plans." (Ex. 7 at 1 ("How does WARN Impact me?").) Their "employment with Paramount Global . . . officially end[s] at the conclusion of the WARN On Leave Period, which [is their] Separation Date." (*Id.*; *see also* Exs. 2–3 (explaining that Plaintiffs would no longer be required to work after their "last day in the office" on September 30, 2024, but would "remain on payroll" until their separation dates); Ex. 4 at 1 (same); Ex. 5 at 1 (same); *see also* Ex. 6, § 1 ("[Y]ou will remain on payroll (at your current base salary) and continue to participate in all Company employee benefit plans in which you currently participate . . . until your Separation Date . . . (the 'On Leave Period')."). Plaintiffs cannot state a claim under either WARN Act based on Paramount's business decision to pay them throughout their notice periods without requiring work in exchange. *See Long*, 506 F.3d at 303; *Williams*, 23 F.3d at 935.

### C. Plaintiffs conflate pay and benefits paid to them pursuant to the WARN Acts with severance payments payable under the Plan.

Plaintiffs admit that they are receiving their full pay and benefits throughout their "Separation Dates," 60 days (Hagins) or 90 days (Costin) after the Notices were provided to them on September 24, 2024. (Compl. ¶ 4 ("Plaintiffs have received automatic . . . weekly payments through their Review Periods."); *id.* ¶¶ 26, 77; Ex. 4 at 1 (noting that Hagins' "Review Period" ended on November 25, 2024); Ex. 5 (noting that Costin's "Review Period" will end on December 23, 2024).) This satisfies any obligations to either Plaintiff under the Federal WARN Act and to Costin under the NY WARN Act.

To avoid this, Plaintiffs attempt to recharacterize the pay and benefits they received up through their "Separation Date" as severance pay "made pursuant to the terms of the Severance

Plan." (Compl. ¶¶ 4, 26). But Plaintiffs' argument is contradicted by the terms of the Notices that Plaintiffs admit they received and the Separation Agreements. *See Rapaport*, 88 F. Supp. 2d at 184.

First, the Notice and One Sheet that Plaintiffs received on September 24 made clear that Hagins' "Separation Date" was November 25, 2024, and that Costin's "Separation Date" was December 23, 2024. (Exs. 2–3; Ex. 4 at 1; Ex. 5 at 1.) They explained that each Plaintiff "will remain on payroll" and will receive their pay and benefits through their Separation Date, regardless of whether they sign the Separation Agreement:

> *Whether or not you sign your Separation Agreement*, you will remain on payroll (at your current base salary) and continue to participate in all Company employee benefit plans in which you currently participate, including medical, dental, basic life insurance and 401(k) until through [Separation Date] or earlier, if you choose to leave the employ of the Company.

(Ex. 4 at 1 (emphasis added); Ex. 5 at 1 (same).)

Second, the FAQs attached as part of the Notice made clear that Plaintiffs "will still be considered an active employee" following their Last Day of work, will still receive their full pay and benefits, and that their employment "will officially end at the conclusion of the WARN On Leave Period, which will be *your Separation Date*":

> 2. Q: How does WARN impact me?
>
> A: Following your Last Day of work, you will be placed on a WARN On Leave Period. *During this time, you will still be considered an active employee, receiving your current base salary, and maintaining participation in all Company employee benefit plans, such as Medical, Dental, Vision, Basic Life Insurance, and 401(k). Your employment with Paramount Global will officially end at the conclusion of the WARN On Leave Period, which will be your Separation Date.*

(Ex. 7 at 1 (emphasis added). The FAQs also make clear that Plaintiffs will receive their full pay and benefits through their Separation Date, "*regardless of if you sign the Separation Agreement*

*or not.*" (*Id.* (emphasis added) ("Do I need to review and sign my Separation Agreement to receive pay and benefits during my WARN On Leave Period?").)

Third, the Separation Agreement makes clear in the first numbered paragraph that "[*r*]*egardless of whether you execute this Separation Agreement*, you will remain on payroll (at your current base salary) and continue to participate in all Company employee benefit plans in which you currently participate, including medical, dental, basic life insurance and 401(k) until your Separation Date." (Ex. 6, § 1 (emphasis added); Compl. ¶ 25.) Of course, neither Plaintiff is bound by the Separation Agreement because they allege they have not signed it. But that does not change that each Plaintiff was (and in Costin's case, still is) considered an "active employee" that "remain[ed] on payroll" through his or her Separation Date.

Lastly, and for avoidance of any doubt, the Plan itself does not require Plaintiffs (or any other employee) to execute a release in order to receive their regular pay and benefits as an active employee. Instead, the Plan provides that severance pay "*under the Plan*" requires an employee to execute an agreement and general release. (Ex. 1, Art. III; *id.* at Art. IV.) Moreover, the Plan provides that "[s]everance benefits under this Plan are *not intended to duplicate* any other severance pay, pay continuation, or advance notice obligations that the Company may have under . . . applicable federal, state, or local law, *including without limitation under WARN*." (*Id.* § 5.3 (emphasis added).) Furthermore, "[i]f other such obligations exist [*e.g.*, under the WARN Act], the employee's severance benefits *under this Plan* will be reduced accordingly." (*Id.* (emphasis added).) In other words, the only benefits that are affected by Plaintiff's decision not to sign the Separation Agreement are the benefits to which Plaintiffs would otherwise be entitled "under the Plan."

Plaintiffs have not signed their Separation Agreements, so they are not entitled to benefits under the Plan. (Compl. ¶¶ 19, 21.) But they received (Hagins) or are still receiving (Costin) their regular pay and benefits on the "regular payroll" as "active employees" through their Separation Dates. This fully satisfied any WARN Act obligations owed to either Plaintiff, so their WARN Act claims in Counts I and II fail to state a claim.

## III. Plaintiffs' Count III Fails to State a Claim Because Paramount's Severance Plan Does Not Violate ERISA.

In Count III, Plaintiffs bring an ERISA claim pursuant to 29 U.S.C. § 1132(a)(3) to redress violations of "this subchapter [of ERISA] or the terms of the plan." (Compl. ¶¶ 74–75.)

Plaintiffs do not allege that Paramount is violating "the terms of the [P]lan," or that they have not received the benefits to which they are entitled under the Plan terms. Instead, Plaintiffs allege that the severance benefit *formula* in the Plan violates "both ERISA and Federal WARN" because the formula for determining an employee's severance benefit includes, as one variable, the amount of WARN Act pay an employee otherwise receives from Paramount. (Compl. ¶ 76.) This claim fails as a matter of law.

To start, Section 1132(a)(3) does not authorize a cause of action for violation of the Federal WARN Act. It only authorizes a cause of action for violations of "any provision of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). Thus, to the extent Plaintiffs are claiming that Paramount (or the Plan) is violating the Federal WARN Act, they cannot bring such a claim in Count III under Section 1132(a)(3) of ERISA.

Moreover, to the extent Plaintiffs claim that the Plan's benefit formula violates ERISA, Plaintiffs are wrong. As explained below, ERISA imposes no such limitation on how an employer defines the amount of the severance benefit it chooses to offer its employees—if it decides to offer severance benefits at all.

### A. **ERISA vests employers with discretion on how to define employee welfare benefits, like severance, that they choose to offer.**

It is blackletter law that "[n]othing in ERISA requires employers to establish employee benefit plans." *Spink*, 517 U.S. at 887. "Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Id.* Instead, ERISA "leaves th[e] question" of the content of benefits "to the private parties creating the plan." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511 (1981); *see also HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) (noting ERISA "does not require employers to provide any particular benefits").

These principles are especially true with respect to welfare plans like the Plan here. (Ex. 1, Art. I ("The Plan is intended to fall within the definition of an 'employee welfare benefit plan' under Section 3(1) of ERISA.").) *See Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir. 1990) ("severance benefits are welfare benefits"). As the Second Circuit has explained, "[i]t is private *parties, not the government, who control the level of benefits under an ERISA [welfare] plan*. ERISA therefore requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan *rather than any particular accounting formula*." *Gonzalez de Fuente v. Preferred Home Care of New York LLC*, 858 F. App'x 432, 433–34 (2d Cir. 2021) (emphasis added) (cleaned up); *McGowan*, 266 F.3d at 148 (same).

Indeed, severance benefit plans do not need a formula at all. Instead, they can be wholly discretionary and determined on a "case by case basis" if that is what the plan terms provide. *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 77–79 (3d Cir. 1991) (holding "[r]eservations to the employer to make welfare benefits determinations on an individual basis are not prohibited by ERISA and allowing them furthers the interest of employees"); *see also Okun v. Montefiore Med. Ctr.*, 793 F.3d 277, 280–81 (2d Cir. 2015) (severance plan was governed by ERISA where it vested discretion with the company president to determine the amount of severance benefits to which an

employee would be entitled); *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 567 (2d Cir. 1998) (ERISA severance plan allowed benefits to be reduced or cut-off if employee engages in activity "inimical to the best interests of the Company," disparages the Company, induces employees to leave the Company and certain other enumerated conduct).

And particularly relevant to this case, the Supreme Court in *Alessi* held that ERISA permits benefit formulas that include "integration," a calculation practice under which benefits under a plan are subject to reduction or offset based on other income streams available to the employee, for example, social security and other resources that "also depend on employer contributions." *Alessi*, 451 U.S. at 514. That is what the Plan does here.

Indeed, the Second Circuit has approved a severance benefit formula that specifically included an offset to the severance amount based on any "workers' compensation, wage replacement benefits, disability benefits, *pay-in-lieu-of-notice*" received by the affected employee. *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 122 (2d Cir. 2022) (emphasis added) (affirming denial of severance benefits for employee terminated because of disability). *See also Braden v. LSI Logic Corp.*, 340 F. Supp. 2d 1066, 1074–76 (N.D. Cal. 2004) (holding plan drafted such that an employee's total severance benefit was reduced by wages received while employed during a WARN notice period did not violate ERISA).

Moreover, for the same reasons, it is lawful and proper for ERISA plans to require employees to execute a release as a condition on the receipt of benefits. *See, e.g.*, *Spink*, 517 U.S. at 893–95 (ERISA plan lawfully conditioned receipt of benefits on employee's execution of release of claims); *Ellis v. DHL Exp. Inc.*, 633 F.3d 522, 528 (7th Cir. 2011) (upholding severance plan that conditioned receipt of severance pay on the employee executing a release of any WARN Act claims). ERISA plans routinely require participants to execute a release of claims as a condition

for eligibility for severance. *See, e.g.*, *Kirk v. Readers Digest Ass'n, Inc.*, 57 F. App'x 20, 21 (2d Cir. 2003) (considering severance plan conditioning severance on "execution of a General Waiver and Release of Claims"); *Kaul v. Hanover Direct Inc.*, 296 F. Supp. 2d 506, 516 (S.D.N.Y. 2004) ("execution and delivery of a general release was a condition precedent to [employee's] entitlement to severance benefits"); *Andrews v. Realogy Corp. Severance Pay Plan for Officers*, No. 13-cv-08210, 2015 WL 736117, at *3 (S.D.N.Y. Feb. 20, 2015) (observing severance plan administrator denied claim, in part, because plaintiff "failed to execute a separation agreement and general release of claims, as required by the Plan"); *Anderson v. Xerox Corp.*, 29 F. Supp. 3d 323, 328 (W.D.N.Y. 2014) (considering severance plan that provided an employee was entitled to severance pay "provided that the employee first executes a release of claims in a form acceptable to [the employer]"), *aff'd*, 614 F. App'x 38 (2d Cir. 2015); *Davis v. Eastman Kodak Co.*, No. 04-cv-06098, 2007 WL 8098431, at *4 n.2 (W.D.N.Y. July 19, 2007) (considering severance plan that included a release requirement).

Here, the Plan's formula and the release requirement are set forth in the Plan. As relevant to these Plaintiffs, the formula can be summarized as follows: two weeks of pay for each year of service, subject to a reduction based on any WARN Act pay provided to the employee and an overall one-week minimum severance benefit under the Plan. (Ex. 1, §§ 5.1, 5.3; *id.* at App'x A (§ 1).) The Plan also explicitly provides that:

> When applying this provision to WARN obligations or other advance notice obligations, benefits under this Plan will be reduced only to the extent that (x) the Company provides WARN Leave in connection with satisfying the notice obligation . . . . In all cases, the Plan Administrator will determine how to apply this provision in order to prevent duplication while complying with applicable law, in its discretion, and may override other provisions of this Plan in doing so.

(Ex. 1, § 5.3.) These provisions govern the amount of Plaintiffs' severance benefits under the Plan *if* they choose to sign the Separation Agreements. (*See id.* at Art. IV.) And if they do not, they

have all their rights (under the WARN Acts and otherwise), but they are not entitled to any benefits under the Plan. (*Id.*) Either way, nothing in the Plan terms violate ERISA, so Plaintiffs' claims in Count III should be dismissed as a matter of law.

**B. Plaintiffs' belief that the Plan violates ERISA appears to hinge on one inapplicable and erroneously decided case.**

Plaintiffs' claim that the Plan's severance formula violates ERISA rests exclusively on a single case that is both inapplicable and erroneously decided: *Gray v. Walt Disney Co.*, 915 F. Supp. 2d 725 (D. Md. 2013). In *Gray*, the court held that "severance owed under [a severance plan] cannot offset *or be offset* by pay in lieu of adequate WARN notice." *Id.* at 734 (emphasis added). In reaching this conclusion, the court did not rely on cases involving whether a severance benefit formula can *be reduced by* WARN pay paid to an employee. Instead, it relied exclusively on cases addressing whether the amount of WARN liability owed to an employee can be reduced or offset based on severance pay paid to that employee. *Id.* at 734–35.

If an employer violates the WARN Acts, the employer's monetary liability can be reduced or offset by:

> (A) any wages paid by the employer to the employee for the period of the violation; [or]
>
> (B) any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation.

*See, e.g.*, *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 151 n.13 (3d Cir. 1998) (quoting 29 U.S.C. § 2104(a)(2)(A)–(B)); *see also* N.Y. Lab. Law § 860-G(4) (mirroring language of 29 U.S.C. § 2104(a)(2)(A)–(B)). But severance pay does not fall into either category because "ERISA payments that the company was already legally obligated to make regardless of the work [employees] performed" are not "wages." *Ciarlante*, 143 F.3d at 152 (holding severance payments are not "wages" under 29 U.S.C. § 2104(a)(2)(A)); *see also Tobin v. Ravenswood*

*Aluminum Corp.*, 838 F. Supp. 262, 273 n.17 (S.D.W.Va. 1993) (same). Nor is severance pay "voluntary and unconditional" because employers have a "legal obligation" to pay eligible employees the severance they are promised. *Tobin*, 838 F. Supp. at 273 n.17 (holding severance payments are not "voluntary and unconditional payment[s]" under 29 U.S.C. § 2104(B)); *Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 733 (7th Cir. 2004) (same); *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1159 (9th Cir. 2001) (same).

Based on these cases, the *Gray* court observed that "severance owed under [a severance plan] cannot offset . . . [WARN liability] because severance benefits are not 'wages' under § 2104(a)(2)(A) and are not 'voluntary' payments because they are already owed under a 'legal obligation.'" *Gray*, 915 F. Supp. 2d at 734. That may be true as far as it goes. That is, if an employer violates the WARN Act, the employer's liability under the WARN Act may not be reduced based on separate severance pay paid to the employee under an ERISA plan.

But the *Gray* court erred in assuming the inverse—that an ERISA severance plan cannot be drafted such that the severance benefit formula under the Plan includes as a variable the amount of pay an employee receives during their WARN notice period. *Id.* To the contrary, the WARN Acts govern the types of payments that can be offset from an employer's WARN liability, but nothing in the WARN Acts purports to govern how an employer may draft its ERISA-governed severance plan or the severance benefit formulas that are or are not allowed.[5] *Braden*, 340 F. Supp.

---

[5] Even if the NY WARN Act attempted to prohibit employers from defining severance benefits as being reduced by the amount of WARN notice an employee receives, ERISA would preempt such a rule. 29 U.S.C. § 1144(a) (providing that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefits plan."); *McGowan*, 266 F.3d at 148 (holding ERISA preempts "all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA"); *see, e.g.*, *Alessi*, 451 U.S. at 524–25 (concluding New Jersey law that attempted to "ban pension benefit offsets based on workers' compensation" was preempted by ERISA because it related to the calculation of benefits available under an ERISA-governed plan); *General Elec. v.*

2d at 1074 (noting that the WARN Act's legislative history "does not state that an ERISA plan may not be drafted so to reduce an employee's total severance benefits by wages received while employed during a [WARN] notice period"). Likewise, nothing in ERISA forbids employers from defining a severance benefit as being reduced by the amount of WARN notice pay an employee receives. *See Alessi*, 451 U.S. at 514 (ERISA plan formula can include offsets based on other statutory entitlements the employee receives); *supra* § III.A.

Indeed, in *Braden*, the Northern District of California confirmed the legality of an employer's severance plan that provided:

> Should the termination of your employment be deemed to be covered by the WARN Act, the severance benefits above[—calculated based on the employee's (1) base salary and (2) years of service to the company—]shall be considered to be payments required by that Act. Accordingly, any payments under this Plan shall be reduced dollar-for-dollar by payments required pursuant to the WARN Act, and all other benefits otherwise provided by this Plan will be offset by benefits required pursuant to the WARN Act.

*Id.* at 1070. As in this case, the plaintiff in *Braden* received the requisite WARN notice as well as her "regular pay and benefits" throughout the WARN notice period, despite having been "relieved of all job responsibilities [before the end of the notice period] so that [she could] concentrate on finding new employment." *Id.* at 1068, 1073. Nevertheless, the plaintiff argued that "any ERISA-regulated, [*sic.*] severance benefit plan that offsets total severance pay by wages paid during a WARN Act notice period violates the WARN Act." *Id.* at 1073.

The *Braden* court rejected this argument because it "push[ed] the bounds of the WARN Act too far" because "the two-fold objectives of the WARN Act—notice and a continued stream

---

*N.Y. Dept. of Lab.*, 891 F.2d 25, 28 (2d Cir. 1989) ("The Supreme Court holds that under ERISA, private parties, not the Government, control the level of benefits. The New York courts hold that under section 220, the Commissioner of Labor not the contractor, determines the supplements to be provided. These courts are adjudicating in the same area but reaching inconsistent results, and that is exactly what ERISA was designed to prevent." (cleaned up)).

of income—[had been] met" where plaintiffs "were given written notice of their layoff[,] their employment was not terminated for sixty days[,] [and they] were paid their regular pay and benefits during the sixty-day period." *Id.* at 1073. "While plaintiffs may not find a severance plan which offsets benefits by wages paid during a WARN Act notice period to be the most attractive plan, it is certainly the province of the employer to draft the metes and bounds of its ERISA benefit plan—or to offer a plan at all." *Id.*

Notably, even if the *Gray* case were correctly decided, it would not help Plaintiffs here. The *Gray* court did not dispute the *Braden* court's holding but held that *Braden*'s reasoning did not apply because of differences in the language of the *Gray* and *Braden* severance plans. *Gray*, 915 F. Supp. 2d at 735. On one hand, the *Braden* plan offset severance payments and benefits "dollar-for-dollar by payments required pursuant to the WARN Acts." *Braden*, 340 F. Supp. 2d at 1070. On the other, the *Gray* court interpreted that plan's provision offsetting an employee's severance benefits by payments made to employees "in the event of a WARN Act *violation*," thus incentivizing employers to violate the WARN Act to reduce their obligation to pay severance benefits to employees. *Gray*, 915 F. Supp. 2d at 734–35.

In this case, the Plan provides:

> Severance benefits under this Plan are not intended to duplicate any other . . . advanced notice obligations that the Company may have under . . . applicable federal, state, or local law, including without limitation under WARN . . . . If other such obligations exist, the employee's severance benefits under this plan will be reduced accordingly.

(Ex. 1, § 5.3.) Unlike in the *Gray* plan, this provision does not apply only in the event of a WARN violation. Instead, the Plan—like the plan in *Braden*—provides that the severance benefit formula includes, as a variable, any payments that are made pursuant to the WARN Acts. Even under *Gray*, that does not violate ERISA.

**CONCLUSION**

Plaintiffs have not yet signed their Separation Agreements, so they are not entitled to any severance benefits under the Plan. And regardless of whether they sign them, they remained employed and received (or are about to receive) all of the WARN Act pay and benefits (60 or 90 days') before their employment with Paramount ended. For the reasons stated above, the Court should dismiss Plaintiffs' Amended Complaint in full.

Dated: December 16, 2024

Respectfully submitted,

*/s/ Jeremy P. Blumenfeld*

MORGAN, LEWIS & BOCKIUS LLP

Jeremy P. Blumenfeld
2222 Market Street
Philadelphia, PA 19103
T: (215) 963-5258
F: (215) 963-5001
jeremy.blumenfeld@morganlewis.com

Joseph A. Nuccio
502 Carnegie Center
Princeton, NJ 08540
Tel: (609) 919-6659
Fax: (609) 919-6601
joseph.nuccio@morganlewis.com

Jade Yee
Geneva Ramirez, *pro hac vice*
110 North Wacker Drive
Chicago, Illinois 60606
Tel: (312) 324-1000
Fax: (312) 324-1001
jade.yee@morganlewis.com
geneva.ramirez@morganlewis.com

*Attorneys for Defendants*