**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JULIAN HAGINS, *et al.*, *individually and on behalf of others similarly situated*,<br><br>Plaintiff,<br>v.<br><br>PARAMOUNT GLOBAL, *et al.*<br><br>Defendants. | Case No.: 1-24-cv-07493-VSB<br><br>CLASS ACTION<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Dated: January 31, 2025

Respectfully Submitted,

/s/ James E. Goodley
James E. Goodley (NY Reg. No. 5724083)
Ryan P. McCarthy*
GOODLEY MCCARTHY LLC
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 394-0541
james@gmlaborlaw.com
ryan@gmlaborlaw.com

*Attorneys for Plaintiffs and the Classes*
** Admitted Pro Hac Vice*

# TABLE OF CONTENTS


**I. INTRODUCTION** ... 1
**II. COUNTERSTATEMENT OF FACTS** ... 4
**III. ARGUMENT** ... 7
  **A. STANDARD ON A MOTION TO DISMISS** ... 7
  **B. CONVERSION OF MOTION TO DISMISS TO SUMMARY JUDGMENT** ... 7
    **1. Legal Standard** ... 7
    **2. Conversion to Summary Judgment is Not Necessary, but if the Court Elects to Convert Defendants' Motion to Summary Judgment, Plaintiffs are Entitled to Discovery Prior to a Ruling** ... 8
  **C. PLAINTIFFS STATE CLAIMS UNDER THE WARN ACTS** ... 9
    **1. The NY WARN Act Protects Workers Such as Plaintiffs Who Report to a Single Site of Employment in New York** ... 9
    **2. Plaintiffs Plausibly Allege that their Employment Was Terminated on Their Last Working Day, September 30, 2024** ... 12
    **3. WARN Does Not Permit Paramount to Take Credit Toward its WARN Liability for Paying its Preexisting Obligations Under the Severance Plan** ... 15
  **D. PLAINTIFFS STATE CLAIMS UNDER ERISA BECAUSE AN ERISA PLAN MAY NOT BE DESIGNED AND DEPLOYED FOR THE PURPOSES OF VIOLATING WARN** ... 19
    **1. An ERISA Severance Plan Cannot Be Designed or Deployed to Offset WARN Liability** ... 21
    **2. As the Severance Plan Contains Provisions Which Violate ERISA, Equitable Relief is Appropriate** ... 23
**IV. CONCLUSION** ... 25

# TABLE OF AUTHORITIES

**Cases**

*Agerbrink v. Model Serv.*,
787 F. App'x 22 (2d Cir. 2019) .......... 8

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Braden v. LSI Logic Corp.,*
340 F. Supp. 2d 1066 (N.D. Cal. 2004) .......... 18, 19

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000) .......... 19

*Carrigan v. Xerox Corp.*,
2022 U.S. Dist. LEXIS 70428 (D. Conn. Apr. 18, 2022) .......... 19

*Ciarlante v. Brown & Williamson Tobacco Corp.*,
143 F.3d 139 (3d Cir. 1998) .......... 2, 12, 14, 15, 16-17

*Coleman v. Optum Inc.*,
2023 U.S. Dist. LEXIS 176666 (S.D.N.Y. Sept. 29, 2023) .......... 11

*Gorini v. AMP Inc.*,
94 F. App'x 913 (3d Cir. 2004) .......... 3, 14, 15, 16, 17, 21

*Gray v. Walt Disney Co.*,
915 F. Supp. 2d 725 (D. Md. 2013) .......... 1, 16, 17-18, 21

*Hoover v. Drivetrain LLC*,
2022 Bankr. LEXIS 2312 .......... 12

*Kinney v. Pub. Consulting Grp., Inc., No. 22-cv-2458 (ER)*
2023 U.S. Dist. LEXIS 47954 (S.D.N.Y. Mar. 21, 2023) .......... 9

*Laurent v. PricewaterhouseCoopers LLP*,
945 F.3d 739 (2d Cir. 2019)(i) .......... 23-24

*Levy v. Local Union No. 810*,
20 F.3d 516 (2d Cir. 1994) .......... 23

*Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001)(B) .......... 17

*Long v. Dunlop Sports Grp. Ams., Inc.*,
506 F.3d 299 (4th Cir. 2007) .......... 14

*Magnuson v. Newman, No. 10-cv-6211*,
2013 U.S. Dist. LEXIS 138595 (S.D.N.Y. Sept. 25, 2013) ..................................................... 11

*Makinen v. City of N.Y.*,
30 N.Y.3d 81, 64 N.Y.S.3d 622, 86 N.E.3d 514 (N.Y. 2017) ................................................. 9

*Masushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..................................................................................................................... 8

*Morton v. Vanderbilt Univ.*,
809 F.3d 294 (6th Cir. 2016) ...................................................................................................... 14

*Mosley v. Nat'l Mar. Union Pension & Welfare Plan*,
438 F. Supp. 413 (E.D.N.Y. 1977) ............................................................................................ 20

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
709 F.3d 109 (2d Cir. 2013) ........................................................................................................ 7

*NLRB v. Amax Coal Co., Div. of Amax*,
453 U.S. 322, 101 S. Ct. 2789 (1981) ............................................................... 19, 20-21, 23

*Pennington v. Fluor Corp.*,
19 F.4th 589 (4th Cir. 2021) ..................................................................................................... 14

*Roberts v. Genting N.Y. LLC*,
68 F.4th 81 (2d Cir. 2023) ............................................................................................... 9, 10, 11

*Shafir v. Continuum Health Partners, Inc.*
57 F. Supp. 3d 325 (S.D.N.Y. 2014) .......................................................................................... 8

*Swanson v. Danimer Sci., Inc.*,
2024 U.S. App. LEXIS 24522 (2d Cir. Sep. 27, 2024) ............................................................ 7

*Teamsters Local No. 145 v. Kuba*,
631 F. Supp. 1063 (D. Conn. 1986) .......................................................................................... 20

*Teamsters Local Union 413 v. Driver's, Inc.*,
101 F.3d 1107 (6th Cir. 1996) ................................................................................................... 12

**Statutes**

29 U.S.C. § 1104 ............................................................................................................ 3, 19, 23

29 U.S.C. § 1132 ............................................................................................................ 2, 23, 24

29 U.S.C. § 2104 ..................................................................................................... 13, 14, 15, 22

12 NYCRR § 921-1.1 ......................................................................................................... 10, 11

12 NYCRR § 921.1 .............................................................................................................. 3, 15

**<u>Rules and Regulations</u>**

Fed. R. Civ. P. 56 .......... 7, 8
Fed. R. Civ. P. 12 .......... 7, 8, 10

## I. INTRODUCTION

Defendants Paramount Global ("Paramount") and CBS Interactive Inc. ("CBS Interactive") created the Paramount Global Severance Plan (the "Severance Plan") (collectively, "Defendants"), an ERISA-covered plan, which expressly incentivizes and permits Defendants to violate the federal (and state) Worker Adjustment and Retraining Notification Act(s) ("WARN Act")—engaging in mass layoffs of their workforce without the required 60-days' notice—without facing any potential WARN liability.

Defendants attempted to utilize the Severance Plan for this very purpose of evading WARN liability. Paramount and CBS Interactive violated WARN in the mass layoffs alleged in Counts I and II of Plaintiff's Amended Complaint, ECF No. 11, ("FAC"), by providing Plaintiffs and WARN Class Members less than one week of advance notice of their termination of employment, and then attempted to use the Severance Plan to satisfy their WARN liability (via the plan's illegal offset provision). It is clear that offsetting WARN liability via a preexisting severance plan is contrary to both WARN and ERISA – for, a laid-off worker is entitled to both WARN payments and full (non-offset) severance. *See, e.g.*, *Gray v. Walt Disney Co*., 915 F. Supp. 2d 725, 734 (D. Md. 2013) ("Many courts have indeed held that ERISA-governed severance benefits may not offset inadequate notice under WARN because such benefits were already legally owed the employees.") (citing cases).

Defendants have engineered a sophisticated scheme to prevent their laid-off workforce from recovering that which they are legally entitled: (1) the Severance Plan requires participants to sign a general release (via a "Separation Agreement") within a time-limited "Review Period" in order to receive their full severance benefits; and (2) the Severance Plan contains a recoupment provision by which Paramount retains the right to claw back the partial severance paid out during

the Review Period if the general release is not signed by the deadline. In short, Defendants used the Severance Plan to violate WARN without consequence by setting up a "Hobson's Choice" for a worker: (1) sign the general release to get your severance benefits, but waive your WARN claim and damages; or (2) forego signing the general release to pursue a WARN claim, but lose your eligibility for severance benefits (and risk Paramount seeking recoupment of any benefits already paid). As a result of this catch-22, Plaintiffs seek to recover backpay under the WARN Acts (Counts I and II), as well as equitable relief under ERISA, 29 U.S.C. § 1132(a)(3) (Count III) to remove the illegal offset provision from the Severance Plan, declare the provision null and void, invalidate any releases signed by Class Members, and prohibit Defendants from seeking to recoup any severance monies paid to those who have not signed releases.

Defendants' MTD should be denied for at least four reasons. First, Defendants' arguments merely highlight factual disputes which need to be fleshed out in discovery. Defendants subtly request this Court to discredit Plaintiffs' requested reasonable inference (they were terminated on September 30, 2024 without prior notice and the subsequent pay they received was a preexisting entitlement under the Severance Plan, **FAC ¶ 26**) and instead adopt Defendants' self-serving inference (after September 30, 2024, Plaintiffs were still inactive employees for months thereafter and no WARN violations occurred, or if a WARN violation did occur, these purportedly non-Severance payments satisfied that liability, **MTD at pp. 10-15**).

Second, the Court of Appeals for the Third Circuit rejected a similar defense tactic in *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 152 (3d Cir. 1998), in which the court stated, "the fact that [severance] payments happened to be labeled [by the employer B&W] 'salary continuation' benefits, and that they happened to be set at the level of the sales representatives' wages, is irrelevant ... the district court was correct in refusing to subtract these

amounts from the damages award." The Court should do the same here. NY WARN even more explicitly undermines Defendants' arguments on this point. See 12 NYCRR § 921.1(c) ("Date of layoff means the last day an employee is eligible or permitted to work for their employer. The fact that an employer continues to pay an employee after the date of the layoff does not change the employee's employment status for purposes of this Part.").

Third, Defendants unconvincingly argue that NY WARN (Count II) does not apply "extraterritorially" to those who worked remotely for Paramount outside of the State, such as Plaintiff Hagins. As explained more fully below, regulations to the NY WARN Act make clear that the Act covers remote employees such as Plaintiff Hagins who reported to or received assignments from a single site of employment in New York.

Finally, Defendants argue that even if WARN liability may not be reduced by Severance Plan liability, the inverse is allowed, *i.e.*, an employer may legally design a Severance Plan to allow for an offset based on WARN liability, and thus Plaintiffs' ERISA claims should be dismissed. The net effect of such a holding would allow an employer to use an ERISA severance plan to benefit itself and violate WARN with impunity, instead of "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a). Indeed, in *Gorini v. AMP Inc.*, 94 F. App'x 913, 921 (3d Cir. 2004), the Court of Appeals stated that "offsetting severance pay by WARN Act penalties produces the same net effect" as offsetting WARN Act penalties by severance pay, and such an offset "would effectively gut the WARN Act." The Court should not allow this result and should allow Plaintiffs' ERISA claims to proceed.

For these reasons and those that follow, Plaintiffs respectfully request that the Court denying Defendants' Motion to Dismiss in its entirety.

## II. COUNTERSTATEMENT OF FACTS

Plaintiffs offer the following facts, as alleged in the FAC (ECF No. 11), as well as in the documents cited by Defendants.[1]

The Severance Plan is an ERISA-governed employee benefit plan which provides severance benefits to terminated employees in the amount of two weeks of wages and benefits per year of service. **FAC ¶¶ 15, 27; ECF No. 39-1 ("Severance Plan")**. The Severance Plan includes an offset provision, which provides that if Defendants violate the WARN Act (i.e., terminate their employees as part of a mass layoff without 60 days' notice), the terminated employees' Severance is reduced by any payments/liability Defendants would owe to the employees for violating WARN Acts. *See* **Severance Plan § 5.3** ("...[i]f [WARN] obligations exist, the employee's severance benefits under this Plan will be reduced accordingly, and if already paid, an appropriate amount of any benefits paid under this Plan shall be returned to the Company.").

The plan requires employees terminated without proper notice to sign a general release in order for the participant to be eligible for their full severance benefits, ***Id.*, Art. IV,** and the release must be signed within a small window of time, the "Release Deadline," *id*.; otherwise, Defendants reserve the right to recoup employees' severance benefits paid under the Severance Plan. ***Id.* § 5.3.** On October 25, 2024, Plaintiffs filed a Motion for Preliminary Injunction, **ECF Nos. 19, 20 ("PI Motion").** On November 7, 2024, the Court approved the Parties' stipulation which resulted in Plaintiffs' withdrawal of their PI Motion. **ECF No. 29 ("Stipulation").** The Stipulation provides that "Defendants shall not ever seek, request or demand recoupment of any monies ...

[1] Plaintiffs refer to the FAC itself, as well as Exhibits to the Declaration of Jeremy Blumenfeld (originally filed by Plaintiffs in their Motion for Preliminary Injunction), and the Declarations of James Goodley, Esq., **ECF No. 20-2 ("Goodley Decl.")**, Plaintiff Julian Hagins, **ECF No. 20-3 ("Hagins Decl.")**, and Plaintiff Shadajah Costin, **ECF No. 20-4 ("Costin Decl.")** (also submitted in Plaintiff's Motion for Preliminary Injunction).

paid to Plaintiffs [or putative class members] since their last day worked (in the case of Plaintiffs, September 30, 2024), regardless of whether any such person ever signs or signed a general release or Separation Agreement." ***Id*. at ¶ 10.** However, the Stipulation, "does not survive the dismissal of this action." ***Id*. at ¶ 12.**

On or about September 24, 2024, with only six days of advance notice, Paramount notified Plaintiffs and hundreds of affected Paramount employees that they would be permanently laid off, as of September 30, 2024. **FAC ¶¶ 23-25; Hagins Decl. ¶ 5; Costin Decl. ¶ 5.** In notices provided by Paramount, laid-off employees were informed that the company "began a restructuring program on August 13, 2024...[and] you are being notified today of your layoff from employment. Your last day in the office will be September 30, 2024." **ECF Nos. 39-2, 39-3**. Paramount told the employees that, "[p]ursuant to the Paramount Global Severance Plan and applicable law, you will remain on payroll...and continue to participate in all Company employee benefit plans," *id*., until November 25, 2024 (in the case of Hagins) and December 23, 2024 (in the case of Costin). The timeframe in which employees have to sign a general release (i.e., the "Separation Agreement") is referred to as the "Review Period." **ECF Nos. 39-6 ("Separation Agreement") at ¶ 23.d**. The "Review Period" corresponds to the "Release Deadline" in the Severance Plan Document. **Severance Plan § 5.3.** Plaintiffs have been paid pursuant to the Severance Plan since their last day of work on September 30, 2024. **Hagins Decl. ¶¶ 7-8; Costin Decl. ¶¶ 7-8.** Plaintiffs have not yet signed Separation Agreements or general releases. **FAC ¶ 30.**

Laid off employees were notified on September 24 that "[i]n accordance with the Plan, if you do not sign this Separation Agreement [within] the Review Period, any payments and benefits previously provided pursuant to your Plan shall not have been earned," and in that case the

employee "shall promptly repay [Paramount] any payments made and [Paramount's] direct costs for any benefit provided" under the plan. **Separation Agreement ¶ 23.e.**

Plaintiffs allege that they and the more than 1,000 workers who worked at and/or reported to New York City Headquarters (1515 Broadway in Manhattan) and close NYC Surrounding Facilities were laid off by Paramount in mass layoffs which were covered by Federal WARN (requiring 60 days advance notice) and NY WARN (requiring 90 days advance notice). **FAC ¶¶ 22-24.** Plaintiffs seek to represent a class of WARN Class Members who were part of mass layoffs on or about September 30, 2024 and February 16, 2024. **FAC ¶ 30.**

On September 24, 2024, during a Zoom meeting with her direct supervisor and a Paramount VP of HR (Joshua Scull), Scull told Plaintiff Costin that "your WARN is your severance." **Costin Decl. ¶ 7**. After this conversation, and based on researching the law, including U.S. Department of Labor materials, Plaintiff Costin challenged Scull on this point via email the next day. **Costin Decl., Ex. 3.E** ("WARN is not the same as dismissal/severance pay. Thus I am reaching out to receive a severance package until March 31, 2024") (requesting 14 weeks of severance pay plus 8 weeks of WARN pay). Separately, on October 3, 2024, Paramount VP of Human Resources – Streaming, Isabell George stated to a CA WARN covered laid off worker that "...following your Last Day Worked (9/30/24), severance pay is offset from any WARN Notice Period (another way to think of it because it has the same result is that severance and WARN run concurrently for anyone who is not actually working.) This is written into our Severance Plan (which we can provide upon request) and is permissible by law. So, employees do not receive WARN and then their full severance – the two timelines are coordinated for payment." **Goodley Decl., ECF No. 20-2, Ex. 1.D.**

## III. ARGUMENT

### A. STANDARD ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)) (internal citations omitted). District courts are to "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in [a plaintiff's] favor." *Swanson v. Danimer Sci., Inc.,* 2024 U.S. App. LEXIS 24522, at *2 (2d Cir. Sep. 27, 2024) (citing *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 168 (2d Cir. 2023)). "[C]ourts may draw a reasonable inference of liability when the facts alleged are suggestive of, rather than merely consistent with, a finding of misconduct." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013).

### B. CONVERSION OF MOTION TO DISMISS TO SUMMARY JUDGMENT

#### 1. Legal Standard

"Rule 12(d) provides: 'If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.' Rule 12(d), therefore, presents district courts with only two options: (1) 'the court may exclude the additional material and decide the motion on the complaint alone' or (2) 'it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Palin v. N.Y.*

*Times Co.,* 940 F.3d 804, 810-11 (2d Cir. 2019). "[U]pon converting a 12(b)(6) motion under Rule 12(d), the court must 'give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56.'"). *Shafir v. Continuum Health Partners, Inc*., 57 F. Supp. 3d 325, 327 (S.D.N.Y. 2014) (quoting *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 69-70 (2d Cir. 2008).

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing the record reveals no genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The nonmoving party must then set forth facts in the record showing there is a genuine issue for trial. *Masushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). The Court "must 'constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor.'" *Agerbrink v. Model Serv.*, 787 F. App'x 22, 24 (2d Cir. 2019) (quoting *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011)).

### 2. Conversion to Summary Judgment is Not Necessary, but if the Court Elects to Convert Defendants' Motion to Summary Judgment, Plaintiffs are Entitled to Discovery Prior to a Ruling

Although Plaintiffs agree with Defendants (see MTD at pp. 3-4, n.2) that the evidence attached to their Opposition (and Plaintiffs' Motion for Preliminary Injunction) may be considered under Rule 12(b)(6) as incorporated into the FAC, should the Court nonetheless decide to convert Defendants' Motion to one of summary judgment, the Court must "'give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56.'" *Shafir*, 57 F. Supp. 3d at 327. See also Fed. R. Civ. P. 56(d). For example, in order to prove their WARN claims, Plaintiffs will need to take discovery concerning which employees

were laid off, at what times, and to which "single site[s] of employment" these employees reported. *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 91 (2d Cir. 2023) (citing 20 C.F.R. § 639.3(i)(1)).

### C. PLAINTIFFS STATE CLAIMS UNDER THE WARN ACTS

#### 1. The NY WARN Act Protects Workers Such as Plaintiffs Who Report to a Single Site of Employment in New York

Like its federal counterpart, the NY WARN Act is a remedial statute, the terms of which must be construed "liberally." *Roberts v. Genting N.Y. LLC*, 68 F.4th 81, 89, 92 (2d Cir. 2023) (explaining that although NY WARN has even "stricter" standards than the federal WARN Act, the statutes' respective regulations are similar, and therefore, "where there is liability under the WARN Act, there is necessarily liability under the New York WARN Act"); *see also Kinney v. Pub. Consulting Grp., Inc.*, No. 22-cv-2458 (ER), 2023 U.S. Dist. LEXIS 47954, at *12 (S.D.N.Y. Mar. 21, 2023) ("Otherwise, all other definitions and requirements mirror those of the federal WARN Act. Given the stricter requirements, wherever there is liability under the federal WARN Act, there is necessarily liability under the NY WARN Act.") (cleaned up; internal quotations omitted); *Makinen v. City of N.Y.*, 30 N.Y.3d 81, 64 N.Y.S.3d 622, 86 N.E.3d 514 (N.Y. 2017) ("Remedial statutes, of course, should be construed broadly so as to effectuate their purpose") (quoting *Matter of Scanlan v Buffalo Pub. School Sys.*, 90 NY2d 662, 676, 687 NE2d 1334, 665 NYS2d 51 (1997)).

Unlike minimum wage and overtime laws such as the New York Labor Law ("NYLL"), NY WARN coverage is focused not on the location of the employee's undercompensated work, but rather, on the employer's mass termination of employees at a "single site of employment." As explained by the Second Circuit, "an employer who shuts down a 'single site of employment' or an 'operating unit' … must give notice to all employees who would reasonably be expected to lose their jobs as a result, whether they work inside or outside the site or operating unit…. [A] covered

employer violates the WARN Act when it orders a plant closing or mass layoff without providing each employee, either individually or through her or his representatives, with [ninety]-days advance notice." *Roberts*, 68 F.4th at 89 (cleaned up; internal quotations omitted).

Regulations to the NY WARN Act make clear that the Act applies to employers who shut down a single site of employment in New York, and to "out-stationed" employees who "report" to or receive their work assignments from that "single site of employment" in New York. *See* 12 NYCRR § 921-1.1(p)(1)(vi). Additionally, the regulations explain that just because a worker works remotely, it does not mean that he or she is not based at the single site of employment for NY WARN purposes. *See* 12 NYCRR § 921-1.1(a)(7)(i) ("All individuals **employed at a single site of employment, including individuals who work remotely but are based at the employment site**, other than part-time employees, are counted as employees for purposes of determining coverage as an employer.") (emphasis added).

When these NY WARN regulations are read together, it is clear that remote workers such as Plaintiff Hagins are covered by NY WARN, not because of *where* their physical work was performed, but because they are members of the group of employees who were all terminated from a single site of employment without adequate notice. Here, at the Rule 12(b)(6) stage, it is assumed to be true that the single site of employment is "Headquarters" and "NYC Surrounding Facilities," **FAC ¶¶ 1, 36**. Plaintiff Hagins also plausibly alleges that he reported to and was assigned work tasks from Headquarters within the meaning of 12 NYCRR § 921-1.1(p)(1)(vi). See also Hagins One Sheet, **ECF No. 39-4** (HR representative at 1515 Broadway, NYC). As a "remote" and "out-stationed" employee, pursuant to 12 NYCRR §§ 921-1.1(a)(7)(i), 921-1.1(p)(1)(vi), Plaintiff Hagins is "based at" the New York Headquarters, the "single site of employment." Thus, Plaintiff Hagins is covered by NY WARN under the express terms of the NY WARN regulations.

Defendant relies on a single unreported case, *Coleman v. Optum Inc.*, for the proposition that the NY WARN Act "only covers work performed in the state." *Coleman*, 2023 U.S. Dist. LEXIS 176666, at *23 (S.D.N.Y. Sept. 29, 2023). *Coleman* did not thoroughly analyze the issue and was incorrect for several reasons. First, *Coleman* quoted *Magnuson v. Newman*, No. 10-cv-6211, 2013 U.S. Dist. LEXIS 138595 (S.D.N.Y. Sept. 25, 2013) for proposition that the "the statute does not apply to people who work outside of the State of New York" (*Coleman*, 2023 U.S. Dist. LEXIS 176666, at *23), but *Magnuson* was not a NY WARN Act case – it was a case concerning unpaid minimum wages and overtime under the NYLL. *See Magnuson*, 2013 U.S. Dist. LEXIS 138595, at *16. Second, as explained above, the focus of WARN is not on the "work performed" by the employee (*Coleman*, 2023 U.S. Dist. LEXIS 176666, at *23), but on the employer's mass termination of employees at a single site of employment without adequate notice. *Roberts*, 68 F.4th at 89.

Third, the *Coleman* court was completely incorrect when it commented that the "N.Y. WARN Act does not appear to contemplate remote workers as being covered by the statute." *Coleman*, 2023 U.S. Dist. LEXIS 176666, at *23. As explained above, NY WARN regulations expressly cover remote workers such as Plaintiff Hagins. *See* 12 NYCRR § 921-1.1(e)(7)(i). Fourth, *Coleman* incorrectly read 12 NYCRR § 921-1.1(p) to only apply to employees "whose primary duties require travel," (*Coleman*, 2023 U.S. Dist. LEXIS 176666, at *24), but this conclusion cannot be squared with: (i) § 921-1.1(e)(7)(i) addressing "remote workers," who as a matter of factual reality are not always required to travel as a primary duty; and (ii) the text of § 921-1.1(p)(1)(vi), which same as its federal counterpart, uses the disjunctive "or" when referring to "employees whose primary duties require travel from point to point, who are out-stationed, <u>or</u> whose primary duties involve work outside any of the employer's regular employment sites…."

*Cf. Teamsters Local Union 413 v. Driver's, Inc.*, 101 F.3d 1107, 1110 (6th Cir. 1996) ("This subpart is written in the disjunctive: any one of the alternatives may qualify as the definition of 'single site.'"); *Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139 (3d Cir. 1998) ("If any one of these three inquiries can be answered in the affirmative, then the Chester center is a covered "single site of employment."); *see also Hoover v. Drivetrain LLC*, 2022 Bankr. LEXIS 2312 (Dist. Del. Bankr. Aug. 19, 2022) ("While the focus of [20 C.F.R. § 639.3(i)(6)] … appears to be more on 'mobile' employees — those who travel regularly rather than reporting to an office — than those who telecommute from home offices, **the text of the regulation undoubtedly covers remote employees**."). Thus, the *Coleman* court was incorrect to graft onto the NY WARN regulation a requirement that employees who work away from the single site must travel as a primary duty in order to be covered by NY WARN. Furthermore, such an interpretation is in direct odds with authority such as *Roberts* and *Makinen v. City of N.Y*, which hold that remedial statutes such as NY WARN must be interpreted "liberally" and "broadly" to effectuate their purpose.

When read as a whole, it is clear that the NY WARN Act and its implementing regulations cover remote workers such as Plaintiffs who were based out of, reported to, and received assignments from New York, regardless of whether they physically worked in the State.

**2. Plaintiffs Plausibly Allege that their Employment Was Terminated on Their Last Working Day, September 30, 2024**

Defendants prematurely dispute the factual question of whether they terminated Plaintiffs' employment on September 30, 2024, without adequate notice, as alleged in the Complaint, or whether they terminated Plaintiffs' employment on November 25, 2024 (in the case of Hagins) and December 23, 2024 (in the case of Costin), with *adequate* notice, as maintained by Defendants. They further prematurely dispute the factual and legal question of whether compensation employees received after their September 30, 2024 terminations was "wages paid by the employer

to the employee for the period of the violation," or "voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation," 29 U.S.C. § 2104(a)(2)(A)-(B), or as stated by Defendants' human resources representatives, severance pay paid pursuant to the Severance Plan as a means of offsetting WARN liability. **Goodley Decl., Ex. 1.D** ("...severance pay is offset from any WARN Notice Period ... This is written into our Severance Plan ... employees do not receive WARN and then their full severance – the two timelines are coordinated for payment."); **Costin Decl. ¶ 7** ("your WARN is your severance").

Defendants cannot assert at the pleading stage that merely because they self-servingly labeled (as part of the above-described scheme to offset their WARN liability) the period after Plaintiffs' terminations the "On Leave Period," **ECF Nos. 39-2, 39-3**, Plaintiffs were, in fact, not terminated without adequate notice on September 30, 2024 as alleged in the Complaint. Likewise, just because Defendants stated in the "One Sheet" that Plaintiff's "Separation Date" was November 24, 2025, does not make it so as a matter of fact (or law, under the WARN Acts). **MTD at pp.13.** And just because Defendants may have used misleading or confusing language when communicating to Plaintiffs and other employees in FAQs concerning the source of compensation they received after their termination, **MTD at p. 5** (while now in litigation Defendants also maintain that each dollar paid to Plaintiffs after their September 30, 2024 termination reduces their severance benefits dollar-for-dollar), does not *ipso facto* mean that the compensation was "wages" or "voluntary and unconditional payment by the employer," 29 U.S.C. § 2104(a)(2)(A)-(B), which may reduce WARN liability.

Defendants cite various cases (all but one of which are summary judgment opinions) for the general legal proposition that no WARN violation is committed where: (1) notice is provided; (2) following notice, the employer does not require the employees to perform work; and (3) the

employer continues to voluntarily pay the employees full wages and benefits for a period of 60 days. **MTD at p. 11.** But in each of the cases relied on by Defendants, unlike here, there was no question as to whether the compensation paid was, in fact, regular and full wages and benefits. *See, e.g.*, *Long v. Dunlop Sports Grp. Ams., Inc.*, 506 F.3d 299 (4th Cir. 2007) ("The employer, however, provided notice of the shutdown at the time of shutdown and for the next 60 days continued to pay full wages and benefits to all but twenty-two employees."). And contrary to the instant case, there was no allegation in any of those cases that the employer was attempting to utilize the amounts paid to the employees following notice (the purported full wages and benefits) to reduce the severance benefits the employees would have been entitled to under the Severance Plan, had no WARN violation been committed. *See generally id.*, *Pennington v. Fluor Corp.*, 19 F.4th 589 (4th Cir. 2021), and *Morton v. Vanderbilt Univ.*, 809 F.3d 294 (6th Cir. 2016).

*Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 152 (3d Cir. 1998) and *Gorini v. AMP Inc.*, 94 F. App'x 913 (3d Cir. 2004) are much more analogous to the instant matter and should be followed by the Court here. In *Ciarlante*, the Third Circuit correctly looked past the employers' self-serving labels of severance benefits paid to employees as "salary continuation," to hold that the employer could not reduce the amount of its WARN liability based on severance benefits paid. As explained by the Court:

> For evidence, B&W points to the fact that the severance payments were labeled "salary continuation" payments, and that they matched the wages that B&W paid when the sales representatives were working.
>
> We find B&W's argument to be without merit. The severance payments made by B&W are not "wages" as contemplated by 29 U.S.C. § 2104(a)(2)(A), but rather ERISA payments that the company was already legally obligated to make regardless of the work the sales representatives performed. The fact that these payments happened to be labeled "salary continuation" benefits, and that they happened to be set at the level of the sales representatives' wages, is irrelevant. The payments made by B&W were not made in exchange for work that the sales representatives would have performed during the period of the violation.

> Accordingly, they are not "wages" according to 29 U.S.C. § 2104(a)(2)(A), and the district court was correct in refusing to subtract these amounts from the damages award.

*Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 152 (3d Cir. 1998). In *Gorini*, the Court held that the reverse was also true, i.e., that an employer cannot offset severance pay with amounts due and owing for a WARN violation. *Gorini v. AMP Inc.*, 94 F. App'x 913, 921 (3d Cir. 2004) ("Gorini argues that offsetting severance pay by WARN Act penalties produces the same net effect. We agree. The offset Tyco urges would effectively gut the WARN Act."). The Court should follow the holdings of *Ciarlante* and *Gorini*, ignore Defendants' self-serving and misleading communications to the terminated employees, and permit this case to proceed to discovery.

As to NY WARN, there is no question that a qualifying termination without adequate notice (i.e., a violation of NY WARN) occurred. *See* 12 NYCRR § 921.1(c) ("Date of layoff means the last day an employee is eligible or permitted to work for their employer. The fact that an employer continues to pay an employee after the date of the layoff does not change the employee's employment status for purposes of this Part. Payments to an employee subsequent to the date of layoff, whether continuing to pay an employee's normal weekly wage, or for severance pay, vacation pay, personal leave, and other similar benefits, shall not extend the employee's date of layoff.").

### 3. WARN Does Not Permit Paramount to Take Credit Toward its WARN Liability for Paying its Preexisting Obligations Under the Severance Plan

Under the Severance Plan and argument asserted by Defendant in its MTD, if an employee's employment relationship was severed under circumstances completely unrelated to a mass layoff covered by WARN, the employee would be entitled to two (2) weeks of base pay for each year of service, subject to a maximum of 52 weeks of base pay. **MTD at p. 4** (discussing and

quoting the Severance Plan). Thus, for example, if an employee who worked for Defendants for 20 years was terminated outside of the WARN context, that employee would be entitled to 40 weeks of severance under the Severance Plan. However, if Defendants violated WARN (i.e., engaged in mass layoffs without providing adequate notice, as alleged here), and were required to pay the 60-days' worth of WARN penalties, Defendants argue that it is permissible under WARN for the same employee with 20 years of service to only receive about 31 weeks of severance under the Severance Plan, plus the 9 weeks of WARN penalties (or 40 weeks in total, even though there was a WARN violation). As explained by the Third Circuit, the permission of such an offset scheme to continue unabated as proposed by Defendants here "would effectively gut the WARN Act." *Gorini v. AMP Inc.*, 94 F. App'x 913, 921 (3d Cir. 2004). The Court should not permit Defendant to offset its WARN liability with Severance Plan benefits, or *vice-versa*.

The law is clear that when an employer who sponsors an ERISA severance plan terminates workers through a WARN-covered mass layoff, the employer is required to pay both full severance (i.e., the severance that would be owed if the termination occurred <u>outside the context of WARN</u>) and any WARN liability owed. Said another way, "ERISA-governed severance benefits may not offset inadequate notice under WARN because such benefits were already legally owed the employees." *Gray v. Walt Disney Co.*, 915 F. Supp. 2d 725, 734 (D. Md. 2013) (collecting cases). *See also Ciarlante v. Brown & Williamson Tobacco Corp.*, 143 F.3d 139, 152 (3d Cir. 1998) ("The severance payments made by B&W are not "wages" as contemplated by 29 U.S.C. § 2104(a)(2)(A), but rather ERISA payments that the company was already legally obligated to make regardless of the work the sales representatives performed. The fact that these payments happened to be labeled "salary continuation" benefits, and that they happened to be set at the level of the sales representatives' wages, is irrelevant. The payments made by B&W were not made in

exchange for work that the sales representatives would have performed during the period of the violation. Accordingly, they are not "wages" according to 29 U.S.C. § 2104(a)(2)(A).”); *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1160 (9th Cir. 2001) (“Because the [severance] payment was obligatory, Sands was not entitled to any deduction from its WARN Act liability under § 2104(a)(2)(B).”); *Gorini v. AMP Inc.*, 94 F. App'x 913, 921 (3d Cir. 2004) (“Tyco also argues that the district court erred by failing to offset Gorini's severance entitlement by notice pay he received under the 1998 Plan. It argues that the 1998 plan specifically requires that the severance pay received under it be offset by any WARN penalties imposed. However, we have already stated that WARN penalties cannot be offset by severance pay without defeating the punitive intent underlying WARN Act penalties, *see Ciarlante*, 143 F.3d at 152. Gorini argues that offsetting severance pay by WARN Act penalties produces the same net effect. We agree. The offset Tyco urges would effectively gut the WARN Act and improperly undermine the precedent of *Ciarlante*.”).

Yet, that is exactly what Paramount’s Severance Plan does and that is the way it was deployed by Defendants. *Compare* **Severance Plan § 5.3** (“...[i]f [WARN] obligations exist, the employee’s severance benefits under this Plan will be reduced accordingly, and if already paid, an appropriate amount of any benefits paid under this Plan shall be returned to the Company.”) *with Gray*, 915 F. Supp. 2d at 734 (holding offset provision illegal which stated “If you become entitled to severance pay . . . on account of [a layoff] subject to WARN, then, to the extent you have been given less than WARN-required advance notice of the date your active services will actually terminate, you will be given a Paid Leave in Lieu of Notice for the balance of the WARN-required advance notice period. . . . When your Paid Leave in Lieu of Notice ends, you will then be entitled to severance pay [under the Plan] . . . , but the amount of severance pay otherwise payable will be

reduced by the cash wages you received for your paid leave."). Defendants clearly utilized this provision in a way that violates WARN (and ERISA). **Goodley Decl., Ex. 1.D** ("...severance pay is offset from any WARN Notice Period ... This is written into our Severance Plan ... employees do not receive WARN and then their full severance – the two timelines are coordinated for payment."); **Costin Decl. ¶ 7** ("your WARN is your severance").

In the face of the overwhelming authority cited above, Defendants rely on a single district court case for the proposition that their offset scheme is permissible under WARN (and ERISA), *Braden v. LSI Logic Corp.*, 340 F. Supp. 2d 1066 (N.D. Cal. 2004). However, this case is clearly inapplicable to the instant matter for several important reasons. First, the plaintiffs in *Braden* (unlike plaintiffs here), conceded that the defendants provided the plaintiffs with 60-days' notice of their termination, <u>in compliance with WARN</u>. *See id.* at 1073 ("Plaintiffs do not dispute that the defendants gave them sixty days written notice of their layoff as required by 29 U.S.C. § 2102(a)."). In contrast, Plaintiffs here were not provided the required notice, as they were terminated with only 6-days' advanced notice of their termination. Second, the plaintiffs in *Braden* (unlike Plaintiffs here), did "not dispute that they received their regular pay and benefits between September 19 and November 18, 2001," and thus, also did not dispute that such amounts were not voluntary and unconditional. *Id.* Here, the amounts Defendants paid to Plaintiffs following their termination were, in fact, paid pursuant to the pre-existing obligation to pay severance benefits under the Severance Plan. **ECF No. 39-6 at ¶ 23.d; Goodley Decl., Ex. 1.D**. Finally, the plaintiffs in *Braden* actually argued that because the defendant did <u>not violate WARN</u>, under the terms of the ERISA severance plan at issue which only permitted offsets in the event of an actual WARN violation, the defendant was not permitted to offset the plaintiff's severance benefits by the voluntary payments of wages and benefits the defendant paid to plaintiffs following their WARN

notice. *Id.* at 1075-76. Here, of course, Plaintiffs contend that Defendants violated WARN and that the amounts paid to Plaintiffs following their notice were not paid voluntarily or unconditionally, but pursuant to the Severance Plan. *See generally*, FAC. *Braden*, which is an outlier standing in contradiction to cases such as *Gray*, *Las Vegas Sands, Ciarlante* and *Gorini*, does not save the Severance Plan's illegal offset provisions, nor save Defendants from WARN liability in this case.

**D. PLAINTIFFS STATE CLAIMS UNDER ERISA BECAUSE AN ERISA PLAN MAY NOT BE DESIGNED AND DEPLOYED FOR THE PURPOSES OF VIOLATING WARN**

"'ERISA's central purpose is to protect beneficiaries of employee benefit plans.'" *Carrigan v. Xerox Corp*., 2022 U.S. Dist. LEXIS 70428, at *10 (D. Conn. Apr. 18, 2022) (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 715 (2d Cir. 2013)). "To that end, ERISA charges Plan fiduciaries with various 'distinct, but interrelated duties,' including duties of prudence and loyalty." *Carrigan* at *10. "ERISA's duty of loyalty is 'the highest known to the law.'" *Bussian v. RJR Nabisco, Inc.,* 223 F.3d 286, 294 (5th Cir. 2000) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). ERISA plan fiduciaries such as Paramount must "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a). See also *NLRB v. Amax Coal Co., Div. of Amax*, 453 U.S. 322, 101 S. Ct. 2789 (1981) ("a trustee bears an unwavering duty of complete loyalty to the beneficiary of the trust, to the exclusion of the interests of all other parties").

"ERISA requires fiduciaries to use 'the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 709 (2d Cir. 2013) (quoting 29

U.S.C. § 1104(a)(1)(B)). ERISA thus codifies a basic negligence standard for plan fiduciaries to follow. *Clark v. Feder Semo & Bard, P.C.*, 895 F. Supp. 2d 7, 34 (D.D.C. 2012) ("The Court also notes that a straightforward rendition of the negligence standard appears in both the Plan itself and the ERISA statute."). Indeed, negligence law has long recognized that a statute may set the standard of care for a reasonably prudent person to follow. *See, e.g.*, *Ramirez v. Plough, Inc.*, 6 Cal. 4th 539, 546-47, 25 Cal. Rptr. 2d 97, 101-02, 863 P.2d 167, 171-72 (Ca. 1993) ("In most cases, courts have fixed no standard of care for tort liability more precise than that of a reasonably prudent person under like circumstances… But **the proper conduct of a reasonable person under particular situations may become settled by judicial decision or be prescribed by statute or ordinance**.") (internal citations and quotations omitted).

It barely need be said that in administering a plan, a reasonably prudent and loyal ERISA plan fiduciary would (rather than act in its own self-interest) seek to comply with applicable federal statutory law that exists to protect plan participants, including WARN. *See, e.g., Teamsters Local No. 145 v. Kuba,* 631 F. Supp. 1063, 1071 (D. Conn. 1986) ("A 'prudent person' in the defendants' position would have understood that employee-benefit plans are subject to a number of restrictions under the [Labor Management Relations Act], ERISA and the Internal Revenue Code and that violation of these restrictions could jeopardize the benefits of plan participants."); *Mosley v. Nat'l Mar. Union Pension & Welfare Plan,* 438 F. Supp. 413, 421 (E.D.N.Y. 1977) ("while the specific provisions of [ERISA] may not be read into the standard of conduct required by § 302(c)(5), the legislative findings and policies underlying ERISA should be considered in determining what is arbitrary and capricious conduct by trustees and whether a pension plan is structurally deficient."); *Amax Coal*, 453 U.S. at 329-332 ("ERISA essentially codified the strict fiduciary standards that a

§ 302(c)(5) trustee must meet."); *Gorini v. AMP Inc.*, 94 F. App'x at 921 (holding ERISA severance plan cannot be offset by WARN liability); *Gray v. Walt Disney Co.*, 915 F.Supp. 2d at 734 (same).

### 1. An ERISA Severance Plan Cannot Be Designed or Deployed to Offset WARN Liability

Defendants recognize, as they must, that "...if an employer violates the WARN Act, the employer's liability under the WARN Act may not be reduced based on separate severance pay paid to the employee under an ERISA plan." **MTD at pp. 20**. Defendants then go on to argue, "the inverse—that an ERISA severance plan cannot be drafted such that the severance benefit formula under the Plan includes as a variable the amount of pay an employee receives during their WARN notice period," *id*., is an incorrect statement of law. Defendants admit that this was a holding in *Gray*. See *Id*. at pp. 19, quoting *Gray*, 915 F. Supp. 2d at 734 ("severance owed under [a severance plan] cannot offset *or be offset* by pay in lieu of adequate WARN notice.'") (emphasis in MTD). Defendants then attempt to discredit this holding in *Gray* by stating that *Gray* is "a single" and "erroneously decided" case. **MTD at pp. 19**.

As an initial matter, *Gray* is not the only authority holding that ERISA severance benefits may not be offset by an employer's WARN liability. For example, in *Gorini v. AMP Inc.*, 94 F. App'x 913, 921 (3d Cir. 2004), the Court of Appeals, relying on the policy concerns stated in *Ciarlante*, forcefully rejected an employer's argument that could "do the inverse": that is, that the employer could offset its severance plan liability with its WARN liability, stating that "offsetting severance pay by WARN Act penalties produces the same net effect" as offsetting WARN Act penalties by severance pay, and such an offset "would effectively gut the WARN Act." Such a holding makes sense, for these are two sides to the same coin. That is, if WARN liability cannot be reduced by a preexisting legal obligation (such as severance plan pay), then severance plan liabilities cannot be reduced by WARN liabilities either. To hold otherwise, would allow

employers to easily contract around federal labor law (via severance plan amendments like Paramount's) and render meaningless both WARN, 29 U.S.C. § 2104(a)(2), and the duties of an ERISA plan fiduciary to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a). *Cf. J.I. Case Co. v. NLRB*, 321 U.S. 332, 337, 64 S. Ct. 576, 88 L. Ed. 762 (1944) ("Wherever private contracts conflict with" the rights afforded by the National Labor Relations Act, "they obviously must yield or the Act would be reduced to a futility.")).

It is Defendants, not Plaintiffs, who rely on a single outlier piece of authority. Defendants insist that *Braden* should govern the disposition of this case. **MTD at pp. 21-22**. For the reasons stated above in Part III.C, the Court should reject the applicability and/or holdings of *Braden* in analyzing whether Plaintiffs state ERISA claims in this matter. Defendants' attempts to factually distinguish this case from the facts of *Gray* (by arguing that the offset provision in this case applies to any "advance notice obligations that the Company may have" rather than only in the context of a WARN violation) should similarly be rejected. This is a distinction without a difference. Defendants advance no reason why the Severance Plan clause at issue here implicates any different policy considerations than those expressed in *Gray, Gorini,* or other similar authorities (e.g., an employer's use of a severance plan to violate federal law <u>without financial consequences</u>).

Defendants rely on highly generalized case law for the proposition that the Severance Plan's WARN offset provision is lawful, stating "[n]othing in ERISA requires employers to establish employee benefit plans," **MTD at pp. 16** (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887, 116 S. Ct. 1783, 1788 (1996)), and that "it is private parties, not the government, who control the level of benefits under an ERISA welfare plan." ***Id.*** (quoting *Gonzalez de Fuente v.*

*Preferred Home Care of New York LLC*, 858 F. App'x 432, 433–34 (2d Cir. 2021)). Defendants similarly point to case law upholding other types of offsets unrelated to an employer's violations of federal law. ***Id.* at pp. 17** (discussing cases involving ERISA benefit plans with formulas that include offsets for social security and workers compensation payments). Plaintiffs do not challenge these general legal principles. However, such principles do not mean that an employer who has chosen to adopt an ERISA plan may use that plan for any purpose whatsoever, including purposes that enrich the employer and allow (indeed, incentivize) it to violate other federal labor law. To allow Paramount to use its Severance Plan to violate WARN would be to ignore ERISA's mandates that plan fiduciaries such as Paramount must "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a), and it would ignore the Supreme Court's statement that "a trustee bears an unwavering duty of complete loyalty to the beneficiary of the trust, to the exclusion of the interests of all other parties." *NLRB v. Amax Coal Co., Div. of Amax*, 453 U.S. 322, 101 S. Ct. 2789 (1981).

To avoid WARN and ERISA becoming a nullity in this scenario, the Court should follow the reasoning in *Gray, Gorini* and the policy analysis in *Ciarlante* and other similar authorities, and allow Plaintiffs' ERISA claims to proceed in conjunction with their WARN claims.

### 2. As the Severance Plan Contains Provisions Which Violate ERISA, Equitable Relief is Appropriate

29 U.S.C. § 1132(a)(3) provides participants such as Plaintiffs a private right of action "to enjoin any act or practice which violates any provision of [ERISA Title I] or [] to obtain other appropriate equitable relief [] to redress such violations." *See Levy v. Local Union No. 810*, 20 F.3d 516, 519 n.7 (2d Cir. 1994); *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 747 (2d Cir. 2019) ("ERISA authorizes reformation of the Plan because, by its plain

language, § 502(a)(3) authorizes participants and beneficiaries to 'obtain . . . equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.' 29 U.S.C. § 1132(a)(3). Here, because reformation is an equitable remedy and the Plan violated a 'provision[] of [the] subchapter' -- specifically, ERISA § 3(24) -- we conclude that § 502(a)(3) authorizes the district court to reform the Plan.").

Based on Defendants' establishment and use of the Severance Plan with an illegal offset provision as a vehicle to satisfy Paramount's WARN liability, Plaintiff requests the following injunctive and declaratory relief under 29 U.S.C. § 1132(a)(3):

(a) Defendants shall not seek, request or demand recoupment of any amounts paid by any of Defendants to Plaintiffs or Severance Plan Class Members[2] with respect to the sixty (60) days following their notification of mass layoffs (e.g., in the case of Plaintiffs, September 24, 2024 through November 23, 2024);

(b) Any general releases signed by Plaintiffs or Severance Plan Class Members shall not affect the rights of Plaintiffs or Severance Plan Class Members to pursue claims under Federal WARN or any state/local equivalent;

(c) A declaration that any provisions in the Severance Plan offsetting severance pay by any WARN liability are null and void for being violative of ERISA and WARN; and

(d) Reformation of the Severance Plan to come into compliance with ERISA by removing said offset provisions.

**FAC, Prayer For Relief.** The requested equitable relief falls within the Court's broad powers under 29 U.S.C. § 1132(a)(3). Defendants do not appear in their Motion to challenge whether

[2] The "Severance Plan Class" refers to Plaintiffs and other Severance Plan participants whose employment was terminated as part of a WARN-covered mass layoff at any time from January 1, 2024 through present. **FAC ¶ 39.**

Plaintiffs adequately state the elements of injunctive or declaratory relief. Nonetheless, should the Court consider this an issue, Plaintiffs refer the Court to their briefing on the subject in their Motion for Preliminary Injunction, **ECF No. 20 at pp. 6-17**.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint.

Dated: January 31, 2025

Respectfully Submitted,

/s/ James E. Goodley
James E. Goodley (NY Reg. No. 5724083)
Ryan P. McCarthy*
GOODLEY MCCARTHY LLC
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 394-0541
james@gmlaborlaw.com
ryan@gmlaborlaw.com

*Attorneys for Plaintiffs and the Classes*
** Admitted Pro Hac Vice*